FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2014 MAY 15  PM 4: 50

WILLIAM W. BLEVINS
CLERK

# FELONY

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

### SECOND SUPERSEDING INDICTMENT FOR CONSPIRACY, WIRE FRAUD, MAIL FRAUD AND FALSE STATEMENTS TO A FEDERAL AGENT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO.: 14-22 |
| v. | * | SECTION: F |
| PETER M. HOFFMAN | * | VIOLATIONS: 18 U.S.C. § 371 |
| MICHAEL P. ARATA | | 18 U.S.C. § 1001 |
| SUSAN HOFFMAN | * | 18 U.S.C. § 1341 |
| | | 18 U.S.C. § 1343 |
| | * | 18 U.S.C. § 2 |

\*        \*        \*

The Grand Jury charges that:

### GENERAL ALLEGATIONS

### AT ALL TIMES MATERIAL HEREIN:

#### The Louisiana Motion Picture Incentive Act

1.      The Louisiana Motion Picture Incentive Act (LMPIA) was enacted to provide incentives for and to encourage the filming of motion pictures and television programs in Louisiana. The Louisiana Department of Economic Development and the Louisiana Office of Film and Television Entertainment Industry Development administered the LMPIA for the State of Louisiana.

2.     Under the LMPIA, companies making motion pictures were eligible to receive tax credits, which were calculated as a percentage of the companies' qualified expenditures in Louisiana.  Qualified expenditures upon which companies could receive tax credits included expenditures on infrastructure.  Infrastructure expenditures only included the purchase, construction, and use of facilities that were directly related to and utilized for motion picture production in Louisiana.  Additionally, in order to qualify for such film infrastructure tax credits, all funds had to be expended, and such expenditures had to be verified by an independent Louisiana Certified Public Accountant (Auditors).

3.     Individuals and businesses that applied to the State for film infrastructure tax credits were entitled to receive an amount equal to 40% of their qualified and audited film infrastructure expenditures.  Once this amount was certified by the State of Louisiana, the applicants could then sell the certification to local businesses and individuals who would then use the tax credit certifications to offset taxes the businesses and individuals would otherwise have owed to the State of Louisiana.  Such sale of tax credits provided a significant source of cash for film-related projects.

**The Defendants**

4.     The defendant, **PETER M. HOFFMAN (PETER HOFFMAN)**, was the Chief Executive Officer of Seven Arts Entertainment, Inc., a company that was primarily involved in the motion picture and entertainment industry in California.  As Chief Executive Officer of Seven Arts Entertainment, Inc., his duties included the selection and production of major motion pictures, strategic planning, business development, operations, financial administration and accounting.  **PETER HOFFMAN** was also an attorney and participated as a lawyer and executive in numerous financial and tax-preferred financings over a period of more than twenty-

2

five years. **PETER HOFFMAN** also owned, operated and controlled numerous companies related to and affiliated with Seven Arts Entertainment, Inc., to include Seven Arts Pictures, Inc., Seven Arts Pictures Louisiana, LLC, Seven Arts Filmed Entertainment Louisiana, LLC and Seven Arts Post, LLC.

5.      The defendant, **MICHAEL P. ARATA (MICHAEL ARATA)**, was a Louisiana attorney and businessman who also owned and operated companies involved in the movie and entertainment industry, including Voodoo Production Services, LLC, Voodoo Studios, LLC, Seven Arts Pictures Louisiana, LLC, and LEAP Film Fund II, LLC.  LEAP Film Fund II, LLC purchased, sold and brokered Louisiana film tax credits.

6.      The defendant, **SUSAN HOFFMAN**, was a California film producer who relocated to the New Orleans area.  **SUSAN HOFFMAN** and **PETER HOFFMAN** were married but had been legally separated since approximately 1998.  **SUSAN HOFFMAN** owned and operated several companies including Leeway Properties, New Moon Pictures, LLC, and Seven Arts Pictures Louisiana, LLC.  Through their respective companies, **PETER HOFFMAN, MICHAEL ARATA,** and SUSAN HOFFMAN were partners in different movie-industry business ventures.

### 807 Esplanade

7.      Through their respective companies, **PETER HOFFMAN, MICHAEL ARATA,** and **SUSAN HOFFMAN** purchased property located at 807 Esplanade, New Orleans, Louisiana (807 Esplanade) on or about October 3, 2007.  807 Esplanade was an old mansion, located in the Faubourg Marigny neighborhood on the edge of the French Quarter, which had fallen into a severe state of disrepair over many years.  The proposed reason for purchasing the property was to renovate the mansion and turn it into a film post-production facility.

3

8.      After purchasing the property, on or about February 26, 2009, January 20, 2010, and July 3, 2012, **PETER HOFFMAN, MICHAEL ARATA,** and **SUSAN HOFFMAN** submitted and caused to be submitted applications and supporting documents to the State of Louisiana in order to receive film infrastructure tax credits for money the defendants claimed had been spent relative to 807 Esplanade.  As required by the LMPIA, the defendants were first required to submit the claimed 807 Esplanade expenditures to auditors for verification.  In order to verify the claimed expenditures, the auditors requested proof of payment from the defendants such as invoices, bank transfers, bank statements, and other corporate financial records.  Based on this information, the auditors created audit reports that detailed the defendants' claimed expenditures on 807 Esplanade.  These reports were then submitted as part of the February 26, 2009, January 20, 2010, and July 3, 2012 submissions to the State of Louisiana for film infrastructure tax credits.

9.      On or about June 19, 2009, the State of Louisiana issued approximately $1,132,480.80 in tax credits as a result of the February 26, 2009 submission.  **MICHAEL ARATA** paid cash to the partnership for these tax credits, at a discounted price, through his company LEAP Film Fund II, LLC.  **MICHAEL ARATA** then sold the tax credits to local businesses and individuals for profit.  The State of Louisiana did not issue tax credits to the 807 Esplanade partnership as a result of the January 20, 2010 and July 3, 2012 submissions.

**COUNT 1**
**(Conspiracy)**

A.      **THE CONSPIRACY:**

1.      The allegations contained in paragraphs 1 through 9 of the General Allegations section of this Second Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

4

2.      Beginning on or about March 1, 2006, and continuing until on or about July 3, 2012, in the Eastern District of Louisiana and elsewhere, the defendants, **PETER HOFFMAN**, **MICHAEL ARATA, SUSAN HOFFMAN**, and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate and agree with each other to:

a.      use and cause to be used a private and commercial interstate carrier in furtherance of and for the purpose of executing the scheme and artifice to defraud set forth in paragraph 2 of Counts 6 through 20; in violation of Title 18, United States Code, Section 1341; and

b.      transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, pictures and sounds in furtherance of and for the purpose of executing the scheme and artifice to defraud set forth in paragraph 2 of Counts 6 through 20; in violation of Title 18, United States Code, Section 1343.

## B.    WAYS AND MEANS TO ACCOMPLISH THE CONSPIRACY:

The defendants and co-conspirators carried out the conspiracy in the following ways and through the following means, among others:

1.      prepared and filed, and caused to be prepared and filed, with the State of Louisiana materially false and misleading tax credit applications and supporting documents that fraudulently claimed that certain expenditures had been made relative to 807 Esplanade when, in truth and in fact, the expenditures had not been made as claimed;

2.      prepared and submitted, and caused to be prepared and submitted, to the auditors and to the State of Louisiana materially false and misleading internal accounting books and records to make it appear as if certain expenditures had been made when, in truth and in fact, the expenditures had not been made as claimed;

5

3.      prepared and submitted, and caused to be prepared and submitted, to the auditors and to the State of Louisiana materially false and misleading payment receipt certifications to make it appear as if certain items had been paid for and received when, in truth and in fact, the items had not been paid for and had not been received;

4.      prepared and submitted, and caused to be prepared and submitted, to the auditors and to the State of Louisiana materially false, misleading and fraudulent invoices in support of fraudulent expenditures;

5.      conducted and caused to be conducted materially false and misleading circuitous bank transfers of money to make it appear that certain items were paid for when, in truth and in fact, the items had not been paid for; and

6.      prepared and submitted, and caused to be prepared and submitted, to the auditors proofs of payment that were materially false and misleading in that only outgoing money transfers were disclosed to the auditors when, in truth and in fact, the money had been immediately returned to the originating bank account and the return money transfers were not disclosed to the auditors.

C.      **OVERT ACTS**:

In furtherance of and to conceal the conspiracy and accomplish its purposes, the defendants, **PETER HOFFMAN, MICHAEL ARATA, SUSAN HOFFMAN,** and others known and unknown to the Grand jury, committed and caused to be committed at least one of the following overt acts, among others, in the Eastern District of Louisiana and elsewhere:

1.      between on or about October 2, 2008 and October 6, 2008, conducted and caused to be conducted circuitous bank transfers of funds in order to create the appearance of payments for construction work;

6

2.        between on or about October 2, 2008 and October 6, 2008, conducted and caused to be conducted circuitous bank transfers of funds in order to create the appearance of payments for film equipment;

3.        on or about November 6, 2008, prepared and caused to be prepared a materially false and misleading affidavit relative to the purchase of film equipment;

4.        on or about December 1, 2008, e-mailed and caused to be e-mailed materially false and misleading bank fund-transfer requests to the auditors;

5.        on or about December 2, 2008, e-mailed and caused to be e-mailed materially false and misleading bank fund-transfer requests to the auditors;

6.        on or about December 9, 2008, e-mailed and caused to be e-mailed materially false and misleading internal accounting documents to the auditors;

7.        on or about December 29, 2008, e-mailed and caused to be e-mailed photographs of film equipment fraudulently claimed to have been purchased for 807 Esplanade;

8.        on or about December 29, 2008, provided and caused to be provided materially false and misleading financial documents, invoices and payment verifications to the auditors;

9.        on or about February 4, 2009, prepared and caused to be prepared a materially false and misleading vendor payment certification for film equipment;

10.        on or about February 4, 2009, prepared and caused to be prepared a materially false and misleading vendor payment certification for construction;

11.        on or about February 9, 2009, e-mailed and caused to be e-mailed a materially false and misleading vendor payment certification for construction costs to the auditors;

12.        on or about February 25, 2009, e-mailed and caused to be e-mailed a materially false and misleading internal accounting record;

13.     on or about February 26, 2009, e-mailed and caused to be e-mailed a materially false and misleading application and support documents for film infrastructure tax credits to the State of Louisiana;

14.     on or about May 14, 2009, e-mailed and caused to be e-mailed materially false and misleading vendor payment certifications and invoices for construction and film equipment to the State of Louisiana;

15.     on or about April 7, 2009, e-mailed and caused to be e-mailed materially false and misleading invoices for construction and film equipment to the State of Louisiana;

16.     on or about September 4, 2009, conducted and caused to be conducted circuitous bank transfers of funds in order to create the appearance of payments for construction, legal fees, and construction finance supervision fees;

17.     on or about September 8, 2009, conducted and caused to be conducted circuitous bank transfers of funds in order to create the appearance of payments for construction, developers' fees, and general contractor fees;

18.     on or about September 9, 2009, conducted and caused to be conducted circuitous bank transfers of funds in order to create the appearance of payments for developers' fees and interest fees;

19.     on or about September 14, 2009, conducted and caused to be conducted circuitous bank transfers of funds in order to create the appearance of payments for developers' fees and construction;

20.     on or about October 27, 2009, e-mailed and caused to be e-mailed materially false and misleading bank fund-transfer requests, supporting bank records, and invoices to the auditors;

8

21.    on or about November 24, 2009, prepared and caused to be prepared a materially false and misleading vendor payment certification for interest payments, legal fees, construction, auditor fees, and overhead;

22.    on or about November 24, 2009, prepared and caused to be prepared a materially false and misleading vendor payment certification for project management fees, office rent and consultant fees;

23.    on or about November 30, 2009, e-mailed and caused to be e-mailed materially false and misleading correspondence to the auditors regarding confirmation letters and equipment purchase information;

24.    on or about December 1, 2009, faxed and caused to be faxed a materially false and misleading vendor payment certification for interest payments, legal fees, construction, auditor fees and overhead to the auditors;

25.    on or about December 1, 2009, faxed and caused to be faxed a materially false and misleading vendor payment certification for project management fees, office rent and consultant fees to the auditors;

26.    on or about December 19, 2009, e-mailed and caused to be e-mailed materially false and misleading correspondence to the auditors regarding equipment purchases, legal fees, audit fees, interest expenditures, office rent, and invoices;

27.    on or about December 21, 2009, e-mailed and caused to be e-mailed materially false and misleading invoices for legal services to the auditors;

28.    on or about December 29, 2009, e-mailed and caused to be e-mailed materially false and misleading correspondence to the auditors regarding equipment purchases, equipment consultant fees, legal fees, office rent, and supervisory fees;

29.     on or about December 31, 2009, e-mailed and caused to be e-mailed materially false and misleading correspondence to the auditors regarding supervisory fees, lease agreements, interest payments, and office rent;

30.     on or about January 7, 2010, e-mailed and caused to be e-mailed materially false and misleading correspondence to the auditors regarding legal fees, office rent, audit fees, equipment consultant fees, and interest payments;

31.     on or about January 12, 2010, e-mailed and caused to be e-mailed an Operating Agreement in support of illegitimate legal fees;

32.     on or about January 20, 2010, e-mailed and caused to be e-mailed a materially false and misleading representation letter to the auditors;

33.     on or about January 20, 2010, e-mailed and caused to be e-mailed a materially false and misleading application and support documents for film infrastructure tax credits to the State of Louisiana;

34.     on or about February 2, 2010, prepared and caused to be prepared a materially false and misleading affidavit relative to the purchase of film equipment and the relationship between the defendants and certain companies;

35.     on or about February 3, 2010, mailed and caused to be mailed materially false and misleading correspondence with attached affidavits, interest payment support, and invoices for project management, equipment consulting and office rent;

36.     on or about June 29, 2012, e-mailed and caused to be e-mailed materially false and misleading bank fund-transfers and invoices to the auditors in support of developer's fees and interest payments; and

37.     on or about July 3, 2012, e-mailed and caused to be e-mailed a materially false and misleading audit report to the State of Louisiana.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2 - 5
### (Wire Fraud)

1.     The allegations contained in paragraphs 1 through 9 of the General Allegations section and section B of Count 1 of this Second Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

2.     Beginning on or about March 1, 2006, and continuing until on or about July 3, 2012, in the Eastern District of Louisiana and elsewhere, the defendants, **PETER HOFFMAN** and **MICHAEL ARATA**, and others known and unknown to the Grand Jury, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises by submitting and causing to be submitted materially false, misleading and fraudulent information to the auditors and to the State of Louisiana for the purpose of obtaining film infrastructure tax credits relative to 807 Esplanade.

3.     On or about the dates specified in each count below, in the Eastern District of Louisiana and elsewhere, the defendants, **PETER HOFFMAN** and **MICHAEL ARATA**, and others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the scheme and artifice to defraud set forth in paragraph 2 of this section, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign

commerce, certain writings, signs, signals, pictures and sounds, as more particularly described below:

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|-------|------|-----------------------------------|
| 2 | February 9, 2009 | E-mail transmitted between Louisiana and outside the State of Louisiana sending payment certification for $2,002,480.00 in construction to the auditors. |
| 3 | February 25, 2009 | Email transmitted between Louisiana and outside the State of Louisiana attaching General Ledger of Seven Arts Pictures Louisiana, LLC. |
| 4 | February 26, 2009 | E-mail transmitted between Louisiana and outside the State of Louisiana sending application for film infrastructure tax credits and supporting documents to the State of Louisiana. |
| 5 | January 12, 2010 | E-mail transmitted between Louisiana and outside the State of Louisiana sending Operating Agreement in support of claimed legal fees to the auditors. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 6 - 20
### (Wire Fraud)

1.      The allegations contained in paragraphs 1 through 9 of the General Allegations section and section B of Count 1 of this Second Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

2.      Beginning on or about March 1, 2006, and continuing until on or about July 3, 2012, in the Eastern District of Louisiana and elsewhere, the defendants, **PETER HOFFMAN,** **MICHAEL ARATA, SUSAN HOFFMAN,** and others known and unknown to the Grand Jury, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises by submitting and causing to be submitted materially false, misleading and fraudulent information to the auditors and to the State of Louisiana for the purpose of obtaining film infrastructure tax credits relative to 807 Esplanade.

3.      On or about the dates specified in each count below, in the Eastern District of Louisiana and elsewhere, the defendants, **PETER HOFFMAN, MICHAEL ARATA, SUSAN HOFFMAN,** and others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the scheme and artifice to defraud set forth in paragraph 2 of this section, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, as more particularly described below:

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|-------|------|------------------------------------|
| 6 | April 7, 2009 | E-mail transmitted between Louisiana and outside the State of Louisiana sending invoices for $2,002,480.00 in construction and $1,027,090.00 in film equipment to the State of Louisiana. |
| 7 | May 14, 2009 | E-mail transmitted between Louisiana and outside the State of Louisiana sending invoices and vendor payment certifications for $2,002,480.00 in construction and $1,027,090.00 in film equipment to the auditors and to the State of Louisiana. |
| 8 | October 27, 2009 | E-mail transmitted between Louisiana and outside the State of Louisiana sending transfer requests, bank statements, invoices and debit slips to the auditors. |
| 9 | November 30, 2009 | E-mail transmitted between Louisiana and outside the State of Louisiana regarding confirmation letters and equipment purchase information being provided to the auditors. |
| 10 | December 1, 2009 | Faxing a November 24, 2009 contractor payment certification for $3,410,932.91 in interest payments, legal fees, construction, auditor fees and overhead to the auditors in Louisiana from outside the State of Louisiana. |
| 11 | December 1, 2009 | Faxing a November 24, 2009 payment certification for $700,000.00 in project management fees, office rent and consultant fees to the auditors in Louisiana from outside the State of Louisiana. |
| 12 | December 19, 2009 | E-mail transmitted between Louisiana and outside the State of Louisiana providing information to the auditors regarding equipment purchases, legal fees, audit fees, interest expenditures, office rent for contractor, and invoices. |

| 13 | December 21, 2009 | E-mail transmitted between Louisiana and outside the State of Louisiana sending invoices for legal services, loan and security agreements, and an operating agreement to the auditors. |
| 14 | December 29, 2009 | E-mail transmitted between Louisiana and outside the State of Louisiana providing information to the auditors regarding equipment purchases, equipment consultant fees, legal fees, office rent for contractor, and supervisory fees. |
| 15 | December 31, 2009 | E-mail transmitted between Louisiana and outside the State of Louisiana providing information to the auditors regarding supervisory fees, lease agreements, interest payments, and office rent for contractor. |
| 16 | January 7, 2010 | E-mail transmitted between Louisiana and outside the State of Louisiana providing information to the auditors regarding legal fees, office rent for contractor, audit fees, equipment consultant fees and interest payments. |
| 17 | January 20, 2010 | E-mail transmitted between Louisiana and outside the State of Louisiana sending application for film infrastructure tax credits and supporting documents to the State of Louisiana. |
| 18 | January 20, 2010 | E-mail transmitted between Louisiana and outside the State of Louisiana sending signed representation letter to the auditors. |
| 19 | June 29, 2012 | E-mail transmitted between Louisiana and outside the State of Louisiana sending proof of payment for developer's fees and yearly interest to the auditors. |
| 20 | July 3, 2012 | E-mail transmitted between Louisiana and outside the State of Louisiana submitting audit report to the State of Louisiana. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 21
### (Mail Fraud)

1.      The allegations contained in paragraphs 1 through 9 of the General Allegations section and section B of Count 1 of this Second Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about February 3, 2010, in the Eastern District of Louisiana and elsewhere, the defendants, **PETER HOFFMAN, MICHAEL ARATA, SUSAN HOFFMAN,** and others

known and unknown to the Grand Jury, for the purpose of executing and attempting to execute, and in furtherance of, the scheme and artifice to defraud set forth in paragraph 2 of Counts 6 through 20 above, did knowingly send and cause to be sent, delivered, and moved by private and commercial interstate carriers correspondence dated February 2, 2010, addressed to an auditor for the State of Louisiana with attached affidavits, corporate agreements, and invoices for project management, equipment consulting, and office rent.

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS 22 - 25
### (False Statements)

On or about January 27, 2014, in the Eastern District of Louisiana, in a matter within the jurisdiction of the United States Department of Justice, a department of the Government of the United States, the defendant, **MICHAEL ARATA**, did knowingly and willfully make materially false, fictitious and fraudulent statements and representations to a Special Agent of the Federal Bureau of Investigation as more particularly described in each count below:

| COUNT | DESCRIPTION OF STATEMENT |
|---|---|
| 22 | **MICHAEL ARATA** stated that he terminated his relationship with defendant **PETER HOFFMAN** in or about July 2009, when in truth and in fact, as he then well knew, he had continued working with **PETER HOFFMAN** including reviewing and preparing information for the January 20, 2010 application for tax credits and other tax credit related business ventures. |
| 23 | **MICHAEL ARATA** stated that he was not aware that $350,000 in legal fees were submitted to the State of Louisiana for tax credits, when in truth and in fact, as he then well knew, he was aware that $350,000 in legal fees had been submitted to the State and he had personally provided information to the auditors in support of the claimed legal fees in order to assist in the completion of the January 20, 2010 application for tax credits. |

| 24 | Regarding film equipment reported in the February 26, 2009 tax credit application to the State of Louisiana, **MICHAEL ARATA** stated that the film equipment had been "acquired" in that the equipment would be contributed to 807 Esplanade by the vendor as a business partner, when in truth and in fact, as he then well knew, the equipment had not been acquired or contributed and that he had repeatedly advised the auditors and the State that the equipment had been purchased and paid for. |
| 25 | **MICHAEL ARATA** stated he thought he fully disclosed both sides of the transactions for construction and equipment expenditures to the auditors, when in truth and in fact, as he then well knew, he had purposely concealed the circular transactions from the auditors. |

All in violation of Title 18, United States Code, Section 1001.

## NOTICE OF FRAUD FORFEITURE

1.     The allegations of Counts 1 through 21 of this Second Superseding Indictment are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Sections 371, 1341, 1343, and 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c).

2.     As a result of the offenses alleged in Counts 1 through 21, the defendants, **PETER M. HOFFMAN, MICHAEL P. ARATA,** and **SUSAN HOFFMAN,** shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 371, 1341, 1343, and 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 371, 1341, and 1343, including but not limited to:

   a.   At least $1,132,480.80 in United States Currency and all interest and proceeds traceable thereto.

3.     If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred to or sold to, or deposited with, a third person;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

All in violation of Title 18, United States Code, Section 981(a)(1)(C), made applicable through Title 28, United States Code, Section 2461(c).


A TRUE BILL:

REDACTED TO REMOVE
FOREPERSON NAME

FOREPERSON


KENNETH ALLEN POLITE, JR.
UNITED STATES ATTORNEY


G. DALL KAMMER
Assistant United States Attorney
Louisiana Bar Roll No. 26948


JORDAN S. GINSBERG
Assistant United States Attorney
Illinois Bar Roll No. 6282956


CHANDRA MENON
Assistant United States Attorney
New York Bar Roll No. 4419222


New Orleans, Louisiana
May 15, 2014

18

FORM OBD-34

No. 14-022 "F"

# UNITED STATES DISTRICT COURT

Eastern ——— District of ——— Louisiana

——— Criminal ——— Division

## THE UNITED STATES OF AMERICA

vs.

**PETER M. HOFFMAN
MICHAEL P. ARATA
SUSAN HOFFMAN**

## INDICTMENT

### SECOND SUPERSEDING INDICTMENT FOR CONSPIRACY, WIRE FRAUD, MAIL FRAUD AND FALSE STATEMENTS TO A FEDERAL AGENT

VIOLATIONS:   Title 18, U.S.C., Sections 371, 1001, 1341, 1343, & 2

_____

_Foreperson_

Filed in open court this _____ day of _____ A.D. 2014.

_____
_Clerk_

Bail, $ _____

G. DALL KAMMER
Assistant United States Attorney