**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 14-022** |
| **v.** | * | **SECTION: "F"** |
| **PETER M. HOFFMAN** | * | |
| **MICHAEL P. ARATA** | | |
| **SUSAN HOFFMAN** | * | |
| | * * * | |

**MEMORANDUM IN SUPPORT OF GOVERNMENT'S CONSOLIDATED MOTIONS**
**IN LIMINE TO EXCLUDE CERTAIN DEFENSE ARGUMENTS AND EVIDENCE**

The government submits the following memorandum in support of its motions in limine to exclude certain defense arguments and evidence it anticipates will arise during the course of the trial of the above-captioned matter. Because these issues and expected arguments lack relevance and raise the likelihood of confusion, distraction, and delay, the proposed motions in limine should be granted.

## I. PERTINENT FACTS

The facts in this case are well known to the Court and require no repeating. Where pertinent for the specific motion, they are incorporated in the argument.

## II. ARGUMENT AND AUTHORITY

**A.** **Motion in limine #1: to preclude any evidence or argument of the state of 807 Esplanade after July 3, 2012 or that the project ultimately merited more in State tax credits than it received.**

The government anticipates that the defendants will seek to introduce evidence, via testimony or exhibit, of the state of the house at 807 Esplanade after July 3, 2012 to lay the groundwork for argument that the property at 807 Esplanade became functional and profitable at some point or that 807 Esplanade deserved more in tax credits than it received. In fact, Mr.

Hoffman has a motion before the Court requesting a site visit to 807 Esplanade during the trial. Such evidence could form the basis for a "no harm, no foul" style defense, wherein the defendants claim that since the 807 Esplanade property is a contributing economic benefit to the community, any fraud in the claiming of tax credits for the house leading up to that time should be ignored. Any such evidence is irrelevant to the core issue of whether or not the defendants committed fraud in 2009, 2010, and 2012, the dates on which applications were submitted to the State of Louisiana for infrastructure credits.

The touchstone of admissibility of any evidence is relevance. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403.  The trial judge has broad discretion over determination of relevance and unfair prejudice.  *United States v. Madera,* 574 F.2d 1320, 1322 (5th Cir. 1978).

While relevance is the key threshold determination, the Fifth Circuit has repeatedly held that relevant evidence should not be admitted if the likelihood of confusion is great and the probative value is low.  *United States v. Tidwell,* 559 F.2d 262, 266-67 (5th Cir. 1977) (holding that court did not abuse its discretion in excluding evidence regarding later foreclosure on defendant's mortgage because the dangers of confusing and misleading the jury outweighed the attenuated probative value of the evidence).

Evidence that 807 Esplanade ultimately came into operation and has been a success to the New Orleans community has no probative value in determining whether or not the defendants

committed fraud when they submitted film tax credit applications in 2009, 2010, and 2012. The likelihood of confusion arising from the introduction of this evidence, and argument that flows from it, is substantial. Such a "no harm, no foul" defense could become a subtle call for jury nullification in this case and should not be permitted. The government likewise opposes any jury site visit to 807 Esplanade for the same reasons: the state of the house today has nothing to do with the contentions in this case and a visit can only serve to mislead the jury. Jurors will be exposed to a beautiful, fully-renovated mansion at the edge of the French Quarter, not the unfinished building that existed when the defendants submitted a tax credit application to the State that claimed millions of dollars in unfounded renovation expenditures.

Furthermore, the defendants have previously argued that the State of Louisiana never demanded return of its tax credits issued for 807 Esplanade because the project ultimately expended more than enough to cover for the credits they received. Any mention that the project ultimately spent more in valid expenditures than it was reimbursed in tax credits by the State would be similarly irrelevant and confusing. What is relevant is whether the defendants conspired and attempted to defraud the State as charged for the credits they sought to receive when they applied for them.

**B.    Motion in limine #2: to preclude evidence or argument concerning treatment of unrelated film or infrastructure projects by the State of Louisiana.**

The government anticipates that the defense will seek to introduce evidence, via testimony or exhibit, of how the State has treated other film or infrastructure projects. Particularly, Mr. Arata has previously requested "any and all documents, correspondence, emails, letters, and/or memoranda" from January 2007 through December 2012" from Louisiana Economic Development (Rec. Doc. 183 at 1), a time period that would encompass over 1200

3

film-related projects.  Mr. Arata has argued that "circuitous bank transactions" for other films were not illegal.  Rec. Dec. 183 at 3.  The expert witness disclosures from Mr. Arata indicate that he seeks to introduce testimony of the State's approval of "various and numerous forms of payment for eligible expenses by means other than cash or checks" and "that the LED has approved various and numerous forms of cash equivalent."  *See* Arata Expert Witness Disclosure attached as Exhibit A.

Evidence of other film-related or infrastructure tax credits granted to other projects is both irrelevant to the charged fraud and is substantially outweighed by the danger of jury confusion and waste of time.  Should the defense get the opportunity to delve into other, unrelated tax credit projects, the government will have to call additional witnesses in rebuttal to conduct a series of mini-trials on each and every ostensibly similar project raised by the defense. Presenting the context surrounding this tax credit application process alone will require over two dozen witnesses.  There is no reason to believe that any other project the defendants can point towards will require fewer witnesses.

The Court has previously recognized the dangers of such a defense.  "The Court shares the government's concern that the trial in this matter not devolve into mini-trials about unrelated tax credit applications."  (Rec. Doc. 209 at 15-16).  Likewise, the Court has stated, "How administrators' internal, undisclosed interpretation of tax credit eligibility requirements, or how other applicants were scrutinized is of no consequence in determining whether the defendants here schemed to defraud the state film infrastructure tax credit program." (Rec. Doc. 209 at 15). The government requests that the Court preclude the defense from this line of evidence and argument.

**C.**    **Motion in limine #3: to preclude evidence or argument implying that the government must prove that the charged statutes gave defendants "fair warning" that their conduct was prohibited or that government must prove that the defendants knew their conduct was illegal under state law or regulations.**

The government anticipates that the defendants may attempt to argue or imply to the jury that in order to prove guilt, the government must prove that the charged statutes gave the defendants "fair warning" that their conduct was prohibited and/or that the government must prove that the defendants knew their conduct was illegal under state law or regulations. In fact, Mr. Hoffman plans on calling an expert to testify about "fair warning." *See* Hoffman Expert Witness Disclosure, attached as Exhibit B. Such attempts should be precluded because a defendant's due process right to "fair warning" is a question of law. *United States v. Nevers*, 7 F.3d 59, 61 (5th Cir. 1993). Therefore, it is an issue inappropriate for the jury's consideration. *United States v. House*, 684 F.3d 1173, 1207 (11th Cir. 2012).; *see, e.g., United States v. Paradies*, 98 F.3d 1266, 1284 (11th Cir. 1996), *as amended* (Nov. 6, 1996) (defendants on trial for mail fraud "requested that the court ask the jury whether the terms of the statute were 'so vague that men of common intelligence' in the position of the … defendants would not have had fair warning . . . they were prohibited from paying dividends or management fees to [a certain company]. The court rejected that request, deciding the vagueness issue as a matter of law . . . the issue of whether a statute is void for vagueness is a question of law for the court to determine. Therefore, the … defendants were not entitled to a 'fair warning' instruction to the jury.") (internal citations and quotation marks omitted). This legal issue is solely for the Court's consideration, and it has been presented for such consideration in Peter Hoffmans's Motion In Limine for Rulings on Three Issues of Law re: Mens Rea. (Rec. Doc. 167).

The government further anticipates that the defendants will not only attempt to argue that the government must prove they had "fair warning" as to the charged federal crimes, but will further attempt to argue that the government bears the burden of proving the defendants had fair warning that their conduct violated state legal duties. Such an argument would be improper for the above-explained reason, as well as the additional reason that the mail and wire fraud statutes do "not require proof that the defendant's conduct violated a separate law or regulation." *United States v. Green*, 592 F.3d 1057, 1064 (9th Cir. 2010) (rejecting defendant's appellate argument that the "rules and regulations [of a government program] were so poorly set out during the relevant time period that her conviction violated her due process right to fair warning that her conduct was criminal.").   For a more detailed analysis of this issue, see the government's opposition to Peter Hoffman's *Mens Rea* motion (Rec. Doc. 206).

Similarly, while it is permissible for the defendants to argue that they lacked intent to defraud, or lacked knowledge of the object of the conspiracy, it is not permissible for the defendants to argue that the government must prove that the defendants knew their actions were illegal under state law or regulations.   Accordingly, the court should preclude the defense from making such argument.   The mail and wire fraud charges in this case do not require proof that the defendants knew that their conduct was illegal under state law.   *See United States v. Rivera,* 295 F.3d 461, 466 (5th Cir. 2002) (observing that intent required to be shown in wire fraud is a specific intent to defraud or deceive); *United States v. Ismoila,* 100 F.3d 380, 399 (5th Cir. 1997) (finding no requirement to provide willfulness instruction in wire fraud case); *see also United States v. Arditti,* 955 F.2d 331, 340 (5th Cir. 1992) (holding that willfulness is not a required element of a conspiracy charge).   Accordingly, since the government need not prove that

defendants knew their conduct was unlawful under state law or regulation, defendants should not be allowed to argue as much to the jury.

**D.    Motion in limine #4: to preclude evidence and argument that the government must prove that the State was actually defrauded.**

The government anticipates the defense may attempt to argue that the government must prove the State was actually defrauded.   The law imposes no such requirement.   *Compare* Hoffmans' memorandum regarding benefit of the bargain (Rec. Doc. 230-1 at 3) ("None of the Material Fraud Allegations establish that LED was denied the Benefit of the Bargain or was materially harmed within the intendment of the Mail or Wire Fraud Statutes, and hence are incompetent to satisfy the government's burden of proof on any of the Fraud Counts.") *with* Pattern Crim. Jury Instr. 5th Cir. (2012) 2.60 ("The alleged scheme need not actually succeed in defrauding anyone."); *United States v. Loney*, 959 F.2d 1332, 1337 (5th Cir. 1992) ("it need not be shown that the intended victim of the fraud was actually harmed.")   Such argument should be precluded.

**E.    Motion in limine #5: To preclude evidence and argument that other individuals could have been charged with additional crimes but were not.**

The government anticipates that the defense may attempt to argue that various individuals, including unindicted co-conspirators, have not been charged with any crimes. The defense may argue to the jury that it is unfair that the defendants have been charged with crimes, while other similarly situated individuals, such as employees of Seven Arts, the auditors involved in these audits, the state employees who run the film tax credit program, or any other applicants for questionable film tax credits remain uncharged.

It would be wholly inappropriate for the jury to hear such evidence and argument.  The claim that others "could have been charged but were not" is not a factual defense which bears upon whether these defendants are guilty.  Rather, this claim is at best a constitutional defense of selective prosecution and at worst an invitation to jury nullification.  Importantly, selective prosecution is never a jury question.  *United States v. Jones,* 52 F.3d 924, 927 (11th Cir. 1995) (noting that selective prosecution claim based on defendant's race is an issue for the court, not the jury); *United States v. Washington,* 705 F.2d 489, 495 (D.C. Cir. 1983) (holding that "selective prosecution" is not a jury question); *United States v. Berrigan,* 482 F.2d 171, 174-76 (3d Cir. 1973) (observing that claim of discriminatory or selective prosecution is one for the court and not the jury).  These defendants have no cognizable claim of selective prosecution, and even if they did, such a claim is never one that can be made before the jury.

Second, evidence that other individuals remain uncharged has no probative value and carries great danger of jury confusion.  The jury's role is to consider all the evidence and determine whether the prosecution has proved its case.  It is not for the jury to weigh the "fairness" of the government's decision to charge certain individuals but not others.  Allowing "fairness" arguments of this type to be made – that these defendants should go free because others similarly-situated were not charged – allows just that.  The fact that someone else remains uncharged makes it no more or less likely that these defendants are guilty of the crimes charged.

Third, the defense should be precluded from arguing that the defendants could have been charged with additional crimes but were not. This argument is also irrelevant.  Whether the defendants could or could not have been charged with other crimes makes it no more or less likely that they committed the charged conduct at issue.  Whether to charge an offense and what

offenses to bring are matters of prosecutorial discretion. *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978) (if prosecutor has probable cause to believe that defendant committed a crime, decision whether to prosecute and what offense to charge is generally in his or her discretion). Telling the jury what additional crimes could have been charged invites the jury to speculate, impermissibly, upon the government's charging discretion.   Such arguments detract the jury from its essential focus of determining whether or not the defendants committed the offenses charged in the indictment.

Similarly, this Court should preclude the defendants from arguing that their own conduct mirrored that of the film industry or other tax credit applicants in general.  Like arguments based on the notion that the government did not charge others with criminal activity, the argument that these defendants cannot be guilty because they merely made the same types of claims and promises that numerous other film companies or tax credit applicants made is designed to appeal to a jury's sense of fairness and to divert its focus from the evidence that is offered at the trial. Simply put, the conduct of the film industry as a whole is of no moment to the guilt or innocence of these defendants.  The question is whether they knew of the falsity of their statements and, if so, whether they chose to make those statements in an effort to deceive the State of Louisiana. Like the proverbial childhood defense of "everyone else is doing it," an argument about the practices of the entire film industry or other applicants is irrelevant and confusing and should be precluded.

The Court has previously recognized the dangers of such a defense. "Schemes, or crimes committed by other, unrelated parties, if also fraudulent under the federal criminal code, are hardly relevant to any criminal conduct in which Mr. Arata himself may have participated. That

the government could have (and perhaps should have) charged others with similar offenses does not make others' conduct relevant to Mr. Arata's ability to defend against the present charges." (Rec. Doc. 209 at 16 n.15).

**F.     Motion in limine #6: to preclude defendants from introducing evidence and cross-examining government witnesses with regard to certain areas of improper impeachment.**

The government anticipates that the defendants may attempt to cross examine and impeach government witnesses regarding issues that are inadmissible for impeachment purposes including current civil proceedings against witnesses, past illegal drug use, and treatment for mental illness.   The Sixth Amendment grants defendants the right to confront witnesses testifying against them at trial and to subject them to cross examination.  *United States v. Sasso,* 59 F.3d 341, 347 (2nd Cir. 1995).  Even so, the Supreme Court has held that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, [and] confusion of the issues."  *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986).

Impeachment under Rule 608(b) must be probative of a witness's character for truthfulness.   Where a witness has not been convicted of a crime, extrinsic evidence of "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness" is inadmissible.  Fed. R. Evid. 608(b).  Extrinsic evidence of "bad acts," such as past drug use, is therefore inadmissible. This Court may permit cross examination regarding specific instances of such conduct if probative of a witness' character for truthfulness.  *Id.*  Current civil proceedings and past drug use, however, are not probative of a

witness' character for truthfulness and cross-examination regarding such conduct should be precluded as improper impeachment.

The government anticipates that the defense may attempt to introduce evidence of pending civil proceedings against some government witnesses.  Specifically, the auditors involved in this case are being investigated and sued by the state, in no small part because of the fraud perpetrated against them by the defendants.  "[T]he mere filing of a complaint is not 'probative of truthfulness or untruthfulness,' regardless of whether the allegations in the complaint, if true, would seriously undermine the witness' credibility."  *United States v. Morrison*, 98 F.3d 619, 628 (D.C. Cir. 1996).  Likewise, this unresolved litigation is not probative of truthfulness on the part of these witnesses and any raising of it will precipitate a mini-trial within this trial as to the merits of the suit, requiring the government to call additional witnesses for this purpose.

While the government will disclose past drug use information to the extent, if any, required, the government anticipates that the defendants may seek to introduce evidence of government witnesses' past drug use in order to impeach their character.  *See* Letter from Counsel for Arata dated December 10, 2014, attached as Exhibit C.[1]  If the defense is considering this path, the Court should preclude such evidence and cross examination, as it is improper impeachment.  A witness' drug use is only relevant in a narrow range of cases.  *See United States v. Samples,* 897 F.2d 193, 197 (5th Cir. 1990) (holding that magistrate properly limited cross examination regarding drug use to the events about which the witness was testifying, as general questions related to drug use would have been irrelevant); *United States v. Cameron,* 814 F.2d 403, 405 (7th Cir. 1987) (holding that evidence of a witness' drug use "may

---

[1] An unredacted copy is available upon the Court's request.

be admitted where the memory or mental capacity of a witness is legitimately at issue.").  It is inadmissible to impeach character for truthfulness. *United States v. McDonald,* 905 F.2d 871, 875 (5th Cir. 1990) (holding that district court erred in allowing cross examination of a defendant regarding drug use). The Fifth Circuit has held that "drug use is not probative of truthfulness," and thus inadmissible under Rule 608(b).  *Id.* The defendants in this case should be precluded from cross-examining witnesses regarding past drug use.

While the government will disclose mental health treatment information to the extent, if any, required, the government anticipates that defendants may seek to introduce evidence of government witnesses' mental health treatment.  In limited cases, evidence of a witness' mental health history may be admissible when probative of the witness' ability to perceive or recollect events.  *Sasso,* 59 F.3d at 347.  Whether such impeachment is admissible is governed by Rule 403 rather than Rule 608(b), as such evidence is probative of the witness' mental capacity rather than propensity to tell the truth.  *United States v. Lindstrom,* 698 F.2d 1154, 1162 n.6 (11th Cir. 1983).  This Court has "has discretion to limit such evidence if it determines that the probative value of the evidence is outweighed by its potential for unfair prejudice, confusion of the issues, or waste of time."  *Sasso,* 59 F.3d at 348.

In determining whether evidence of a witness's mental health history is probative of credibility, courts examine "the nature of the psychological problem, the temporal recency or remoteness of the history, and whether the witness suffered from the problem at the time of the events to which [he or] she is to testify, so that it may have affected [the] ability to perceive or to recall events or to testify accurately." *Id.* at 347-348 (internal citations and quotation marks omitted).  As the Fifth Circuit has noted, "[a] defendant has 'the right to attempt to challenge a

12

witness's credibility with competent or relevant evidence of any mental defect or treatment at a time probatively related to the time period about which [the witness is] attempting to testify.' " *United States v. Jimenez,* 256 F.3d 330, 343 (5th Cir. 2001) (quoting *United States v. Partin,* 493 F.2d 750, 763 (5th Cir. 1974)).  Tellingly, however, such evidence is inadmissible if it is not probative of a mental impairment "of the witness's 'ability to comprehend, know, and correctly relate the truth.'"  *Id.* (quoting *Partin,* 493 F.2d at 762).

In *Jimenez,* the Fifth Circuit held that the district court had not abused its discretion in excluding evidence of a witness's depression, suicidal tendencies, hospitalization, and medication. *Jimenez,* 256 F.3d at 344.  Given that the witness was never diagnosed with a psychosis, there was only a "tenuous argument" that the witness "suffered from an impairment affecting his ability to comprehend and tell the truth." *Id.*  The danger of unfair prejudice from such impeachment material substantially outweighs its probative value.  *See also Sasso,* 59 F.3d at 348 (affirming district court's limitation of cross examination regarding witness's depression where no evidence of delusion or medication that would impair mental capacity); *United States v. Butt,* 955 F.2d 77, 83 (1st Cir. 1992) (affirming limitation on cross examination regarding witness's depression and suicide attempt where no diagnosis of psychiatric disorder).  The unfair prejudice introduced by the perceived stigma of treatment for mental illness substantially outweighs the probative value of such evidence in this case and the government requests that such impeachment be precluded.

At the very least, the defendants should be required to request a conference with the Court before any inflammatory and arguably improper impeachment evidence is introduced in the presence of the jury.  As Judge Vance ruled in *United States v. Hudson*, "before the

defendant may attempt cross-examination of a Government witness related to the witness's drug use, he shall proffer, outside of the presence of the jury, evidence that the witness's drug use affected the witness's perception of the underlying events or memory of those events. Specifically, defendant shall proffer information about the type and amount of drugs used by the witness, the probable effect, and when the witness used the drugs in relation to the events about which he testifies and in relation to the time he gives his testimony. Following the proffer, the Court will determine whether to permit cross-examination related to drug use."   2011 WL 5357902, at *3 (E.D.La. Nov. 7, 2011).  The government would, at the least, request the same in this case.

### G.   Motion in limine #7: To preclude evidence or argument that government prosecutors or agents have acted improperly or engaged in unfair or outrageous conduct.

As a cautionary matter only, the government wishes to preclude any potential argument that the government's prosecutors or investigators have acted inappropriately or unethically.  The government does not contest the right of the defense to challenge the government's evidence or to present its own evidence.  The government does contest the right of the defense to claim in front of the jury that the way in which the government conducted its investigation, or the way in which these particular defendants were selected for investigation and prosecution, was somehow unfair or inappropriate.

Recent representations by defendant Michael Arata hint at allegations of impropriety by government prosecutors or investigators. See Exhibit C.  While the government recognizes the right of the defense to file such motions, the allegations which underlie these motions have no basis before the jury.  As a general matter, claims of governmental misconduct must be argued, if

14

at all, to the Court and not to the jury.  *See United States v. Cuervelo,* 949 F.2d 559, 567 (2d Cir. 1991) (finding that "outrageous governmental conduct" is a matter of law for the court to decide); *United States v. Bontkowski,* 865 F.2d 129, 131 (7th Cir. 1989) (holding that "outrageous conduct" of government is a question for the court and not the jury).  Accordingly, a motion in limine is appropriate. *See United States v. Andreas,* 23 F. Supp.2d 835, 848-851 (N.D. Ill. 1998) (granting motion in limine as to argument and inquiry regarding investigative or prosecutorial misconduct), *aff'd,* 216 F.3d 645 (2000).

Based on the foregoing, the government asks the Court to grant a motion in limine precluding the defense, at trial before the jury, from argument or inquiry regarding alleged prosecutorial or investigative misconduct, to include but not limited to allegations that any Assistant United States Attorneys misled Michael Arata into thinking he was not a subject on the eve of his indictment or allegations that any agents or investigators at the FBI misled any of Mr. Arata's family that he was not a subject of investigation.  If the defendants have evidence or argument regarding these or any other matters having to do with the investigation or prosecution of this case, they should be addressed to the Court outside the presence of the jury.

**III.     CONCLUSION**

For the reasons outlined above, the government requests that these motions in limine be granted.


Respectfully submitted,

KENNETH ALLEN POLITE, JR.
UNITED STATES ATTORNEY

s/ James Baehr_____
G. DALL KAMMER (La Bar Roll No. 26948)
CHANDRA MENON
JAMES BAEHR (La Bar Roll No. 35431)
Assistant United States Attorneys
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3023
Email: james.baehr@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 19, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record.

s/ James Baehr
JAMES BAEHR
Assistant United States Attorney
