UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. 2:14-CR-00022 |
| | * | |
| PETER M. HOFFMAN, | * | |
| MICHAEL P. ARATA, and | * | |
| SUSAN HOFFMAN | * | |
| Defendants | * | |

**MEMORANDUM OF PETER HOFFMAN IN RESPONSE TO GOVERNMENT'S MOTION TO EXCLUDE EXPERT TESTIMONY**

Defendant Peter Hoffman opposes the government's Motion To Exclude Expert Testimony filed December 24, 2014 [Dkt. 259] ("Expert Testimony Motion"), but accedes to the Expert Testimony Motion to the extent this Court grants all relief requested in Mr. Hoffman's Motion In Limine To Determine Three Questions Of Law Re: Mens Rea [Dkt. 168] ("Mens Rea Motion"). The Expert Testimony Motion mixes together four distinct issues discussed in Parts 1 through 4 below and also discussed in the Mens Rea Motion, Mr. Hoffman's Reply to the government's Opposition to the Mens Rea Motion filed December 3, 2014 [Dkt. 216] ("Reply"), the government's Motion In Limine To Exclude Certain Defense Arguments And Evidence filed December 19, 2014 [Dkt. 251] ("Government In Limine Motion") and Mr. Hoffman's Response thereto to be filed shortly.

Mr. Hoffman opposes any accelerated preliminary evidentiary hearing on the reliability of the proposed expert testimony, based on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993) ("*Daubert*"). A so-called *Daubert* hearing is required to determine whether

1

proposed expert testimony on technical or scientific issues is "scientifically valid" or sufficiently reliable to be heard by the jury.  No such reliability issues are raised by the tax and accounting expert opinions proposed by Mr. Hoffman, and there is therefore no scientific evidence to be heard at such a hearing.  Naturally, this Court will determine if the experts proposed by Mr. Hoffman are qualified to express such opinions which can be established by the usual *voir dire.* The government can cite no case requiring a *Daubert* hearing to determine the reliability of tax or accounting opinions and the many cases (cited below) authorizing such expert testimony set forth no such requirement.  The issue is whether tax and accounting opinions as proposed by Mr. Hoffman are irrelevant or improper legal conclusions or pure questions of law, as the government contends, which they are not as established by the case law.  Mr. Hoffman requests this Court to consider the Expert Testimony Motion and the Mens Rea Motion at the same time as both raise common issues of law and fact.

The four distinct issues mixed together by the government relate to the applicability and use at trial of the Film Tax Credit Statute,[1] regulations and rulings thereunder, general accounting and tax principles and administrative practice of Louisiana Development of Economic Development ("LED") thereunder (the "Applicable Tax Law"). The government has successfully claimed before this Court that it has properly charged Mr. Hoffman with a fraud on LED's revenue collection function but then claims the Applicable Tax Law defining that revenue collection function is not relevant to those charges.  The government's effort to exclude expert testimony on the Applicable Tax Law is but one of its efforts to prosecute a charge of fraud on Louisiana revenue without reference to the Louisiana law and practice that governs the State's

---

[1] Attached as Exhibit I to Mr. and Mrs. Hoffman's Motion To Dismiss The Indictment [Dkt. 100] ("Motion To Dismiss").  Defined terms used herein shall have the meanings set forth in the Motion To Dismiss and the Mens Rea Motion.

right to those revenues.

An objective reader of the original Indictment [Dkt. 1] would think that the government was alleging that SAPLA's applications for Louisiana Infrastructure Tax Credits appeared legitimate but in fact concealed actions clearly probative of fraudulent intent, such as claims for expenses never incurred, forged contracts, altered bank records, expenses charged to the project but in fact used for other purposes, etc.  No expert testimony is needed to explore the illegality of such actions.

However, no such actions in fact occurred in this case and the charges all implicate only ordinary administrative questions under the Applicable Tax Law: When may a claim of "base investment" be made?  When can tax credits arising from such "base investment" be transferred? Are non-refundable cash payments required for either or both claims of "base investment" or for transfer of tax credits arising therefrom?  What related party expenditures are valid claims of "base investment" and what evidence of payment or satisfaction thereof should be required? May claims of "base investment" in an application be amended in subsequent applications without penalty as circumstances change?  Surely no reporting position of any applicant for Infrastructure Tax Credits regarding these questions, without clear guidance from revenue authorities, can be a crime or a fraud on the revenue, and at best are only a basis for administrative review and denial by the agency (LED) with such administrative authority.  As discussed below, these administrative questions are exactly the sort of matters for which expert testimony is not only permitted by the case law.

Formal cash transfers made by SAPLA are not a "smoking gun" indicative per se of fraudulent intent.  The government now acknowledges, as would any tax practitioner, that formal cash transfers as well as other formal "steps" to create an "audit trail" or to "check the box" in a

claim for a tax benefit, are not fraudulent per se.[2] The government has yet to elucidate its view of why such formal cash transfers or "circular payments" are fraudulent in one case and innocent in another. However, long established Federal "common law" of taxation, to be established by expert testimony, provides the logical answer.[3] Formal cash transfers and other alleged "paper shuffling" or "steps" in tax planning are indicative of a "sham" transaction with "form" but no "substance" when that transaction both (a) was not entered into with a subjective business purpose independent of tax benefits and (b) had no objective expectation of economic profit or risk of economic loss independent of expected tax benefits. These tests, however, have no application to this case as there can be no dispute that the underlying transactions by SAPLA in buying and rehabilitating the Property were intended for economic profit and resulted in a disastrous economic loss to SAPLA and the Hoffmans upon foreclosure by the lender. Indeed, the government in the Government In Limine Motion seeks to exclude this evidence from trial.

    1.    *Is The Applicable Tax Law Relevant To Mr. Hoffman's Good Faith And The Mens Rea Issues At Trial?*

The government contends that the Applicable Tax Law is not relevant to the determination of Mr. Hoffman's good faith or his *mens rea*. The government charges at their core are that Mr. Hoffman allegedly misled professional auditors into believing that certain qualifying "base investment" under the Tax Credit Statute was expended in non-refundable cash payments, when in fact it was not. The basis for this allegation must be that the Applicable Tax law required such non-refundable payments and that to apply for certification without such payment was in effect an implied representation that such payments were made. SAPLA and

---

[2] The government's two admissions of this uncontroversial assertion are cited in Michael Arata's Motion In Limine filed December 19, 2014 [Dkt. 248] at 3.

[3] The leading authorities are cited in the Mens Rea Motion at 13-14. There are literally thousands of cases since the 1930's applying the principles discussed in the text.

Mr. Hoffman made no such specific representation. The government then claims that the Applicable Tax Law provisions on cash payment are irrelevant to its charges, Expert Testimony Motion at 7, but its charges cannot be sustained without reference to the Applicable Tax Law.

This Court has ruled in its Order of November 19, 2014 [Dkt. 209], Mr. Hoffman's knowledge and understanding of the publicly available Applicable Tax Law is directly relevant to his good faith and *mens rea* in making the claims for certification of "base investment" set forth in the three Audit Reports submitted to LED. As set forth in the Mens Rea Motion and the Reply, under either the *Cheek* rule or the "willfulness" requirement of *Foshee*, the government must prove beyond a reasonable doubt that Mr. Hoffman intended SAPLA to make a fraudulent claim for certification of "base investment" under the Applicable Tax Law by allegedly "lying" about a required element for such certification.

The Applicable Tax Law is thus not only relevant but essential to this required element of the alleged crime. The alleged "lies" (in fact the non-existent, alleged non-disclosure to the Auditors) charged in the Second Superseding Indictment [Dkt. 78] can only be "fraudulent" claims by SAPLA (indirectly) for Infrastructure Tax Credits if SAPLA would not otherwise be entitled to such credits. SAPLA's entitlement to such Infrastructure Tax Credits can be determined only by the Applicable Tax Law, not the Wire or Mail Fraud Statutes. SAPLA's claim for certification of "base investment" can only be a fraud on the revenue if SAPLA's basis for accounting was clearly forbidden by the Applicable Tax Law.

The government now further claims in the Government In Limine Motion that it need not prove beyond a reasonable doubt that Mr. Hoffman had a "specific intent to defraud" and, to do so, need not prove beyond a reasonable doubt that his acts were done "willfully," i.e., "committed . . . with bad purpose either to disobey or disregard the law." See *United States v. St.*

*Gelais*, 952 F.2d 90, 93-94 (5th Cir.) *cert. denied* 506 U.S. 965 (1992) ("*St. Gelais*") which approved those jury instructions. The *St. Gelais* language is drawn from 2 Sand-Siffert-Loughlin-Reiss-Allen-Rakoff, *Modern Federal Jury Instructions* ¶44.01, Instruction 44-5 (2014), which states that such language properly defines "specific intent to defraud." The *St. Gelais* formulation or variants on it have been repeatedly approved by the Fifth Circuit, in lieu of a specific instruction that good faith is a complete defense to wire and mail fraud charges.[4]

Yet the government contends in the Government In Limine Motion that the cases do not require such a charge of "willfulness" in wire and mail fraud cases and that it need not prove that Mr. Hoffman had a "bad purpose to either disobey or disregard the law." It first cites *United States v. Arditti*, 955 F.2d 331, 340 (5th Cir. 1992) but that case dealt only with the instructions for a *conspiracy* charge, which did not have the requirement of a "specific intent to defraud," and stated that the *further* intent required would be found in the law applicable to the underlying offense. See *United States v. Bedford*, 536 F.3d 1148, 1155 (10th Cir. 2008). The government next cites *United States v. Ismoila*, 100 F.3d 380, 399 (5th Cir. 1996) which only quotes part of the instructions given[5] and then purports to follow *United States v. Keller*, 14 F.3d 1051, 1056 (5th Cir. 1994), a case which did *not* rule on jury instructions and which simply quoted *St. Gelais* as the authority for jury instructions in wire and mail fraud cases. *Arditti* and *Ismoila* do not overrule *St. Gelais* or its form of instructions repeatedly approved by the Fifth Circuit. The government must prove "bad purpose either to disobey or disregard the law," and hence the

---

[4] *United States v. Klein*, 543 F.3d 206, 211 (5th Cir. 2008) *cert. denied* 555 U.S. 1200 (2009); *United States v. Frame*, 236 Fed. Appx. 15, 16 n. 1 (5th Cir. 2007); *United States v. Jobe*, 101 F.3d 1046, 1059 (5th Cir. 1996) *cert. denied,* 522 U.S. 823 (1997) ("*Jobe*"); *United States v. Jensen*, 41 F.3d 946, 954 n. 7 (5thCir. 1994) *cert. denied* 514 U.S. 1101 (1995).

[5] The jury instructions may have only used the word "knowingly," not "willfully," without a specific charge that "good faith" is a "complete defense." However, "knowingly" is a word that includes the same requirement set forth in *St. Gelais*, that the defendant "knowingly did an act which the law forbids." *Jobe*, 101 F.3d at 1059.

Applicable Tax Law is directly relevant to Mr. Hoffman's *mens rea*.

  2. *What Evidence And Argument Can Be Presented To The Jury Regarding The Applicable Tax Law If The Applicable Tax Law Is Relevant To The Mens Rea Issues At Trial?*

Assuming the Applicable Tax Law is relevant to the *mens rea* issues at trial, then Mr. Hoffman should be able to introduce evidence and argue at trial regarding:

  A. The text of the Applicable Tax Laws, including the Statute, regulations, revenue rulings, legislative history, accounting practice and comparable tax provisions;

  B. General tax and accounting principles applicable to "substance over form" and "sham transactions";

  C. Comparable public certifications by LED of other film infrastructure projects; and

  D. General public understanding and interpretation of the meaning of the Applicable Tax Law and its elements at the relevant times charged in the Second Superseding Indictment.

The government appears to suggest that this evidence and argument would be confusing or misleading, but offers no reasons other than the claimed irrelevance of this evidence or argument. Mr. Hoffman cannot otherwise put on his defense both as to whether there was even any *intended* harm[6] to LED from SAPLA's requests for certification of "base investment" and as to his good faith and *mens rea*, as required by *Cheek, Foshee* and the *St. Gelais* jury instructions.

---

[6] Discussed in Mr. Hoffman's Motion In Limine For Determination Of An Issue Of Law Re: Benefit Of The Bargain [Dkt. 230].

3.     *If The Applicable Tax Law Is Relevant And Its Elements Offered As Evidence And Argument At Trial, What Is This Court's Role In Determining The Meaning Of The Applicable Tax Law As Applied To The Charges In This Case?*

The Government argues both that the Court should not review or determine the meaning of the Applicable Tax law as applicable to the charges in this case and also that the determination of this meaning is an issue of law for the Court, not an issue for consideration by the jury. These contradictory positions would result in no consideration by the jury of the meaning of the Applicable Tax Law.

As discussed in the Mens Rea Motion and Reply, the proper role for this Court is not to determine the meaning of the Applicable Tax Laws, which is an institutional responsibility for LED and the Louisiana Department of Revenue ("DOR"), but rather to determine whether the Applicable Tax Law as determined by LED and DOR gave "fair warning" to Mr. Hoffman that his conduct was a criminal fraud on the revenue, by a "clearly relevant precedent" or "authoritative construction" of the Applicable Tax Law. In other words, this Court's role is to determine whether the Applicable Tax Law is objectively ambiguous such that *no* taxpayer could form the required *mens rea* for fraud on the revenue[7] or to permit relevant evidence of the defendant's state of mind regarding the legality of his or her conduct under the Applicable Tax Law. This role is supported by directly applicable case law and does not require this Court to make a ruling of law regarding the meaning of the Applicable Tax Law at the relevant times or as applied to the charges in this case. The government seeks to *avoid* such a "fair warning" ruling, not request it as a matter of law for the Court.

The Applicable Tax Law in its early days was ambiguous and uncertain, as virtually any

---

[7] As set forth in *United States v. Vallone*, 698 F.3d 416, 454 (7th Cir. 2012) *vacated on other grounds*, 133 S.Ct. 2825 (2013) ("*Vallone*").

tax practitioner will testify. Therefore, Mr. Hoffman could not have formed the required *mens rea* with respect to the Challenged Conduct therein defined. But if the Court declines to rule on the *mens rea* issue as a matter of law under the "fair warning" rule, then the issue of Mr. Hoffman's *mens rea* must go to the jury with expert testimony to help them understand the meaning of the Applicable Tax Law. Mr. Hoffman must be permitted to introduce that testimony in order to present a full defense.

The generalized authority cited by the government does not relate to charges of a fraud on a revenue collection function, involving a review of the Applicable Tax Laws. Expert Testimony Motion at 2. As cited and acknowledged in the Mens Rea Motion, the judge is the only legal expert in a Federal Courtroom. But if this Court declines to rule on the "fair warning" issue, then it is for the jury to determine Mr. Hoffman's *mens rea*. The jury must therefore have access to the meaning of the Applicable Tax Laws as applied to this case.

This Court could rule itself on the meaning of the Applicable Tax Law as applied to the charges in this case based on the available authorities and so instruct the jury. But such a definitive ruling would not resolve the *mens rea* issues since Mr. Hoffman would not have had notice of such rulings at the time charged in the Second Superseding Indictment and should still be entitled to argue the ambiguities and uncertainty in the Applicable Tax Law *at that time*, as such relate to his state of mind. If, however, the Court determines to rule on the meaning of the Applicable Tax Law as applied to the charges in this case, Mr. Hoffman requests the opportunity to file a more complete briefing of those issues with appropriate third party briefing from experts to assist the Court in any such rulings.

4. *If The Applicable Tax Law Is Relevant To Mens Rea And The Court Does Not Determine As A Matter Of Law The Meaning Of The Applicable Tax Law As Applicable To The Charges, What Is The Proper Rule Of Expert Testimony On The Applicable Tax Law?*

The government appears to object to virtually all expert testimony to be offered by either Mr. Hoffman or Mr. Arata by claiming that the opinions are irrelevant and "legal conclusions." The relevancy objection is addressed above and in the Mens Rea Motion. The "legal conclusion" objection is addressed in this section. If the Court rules that no "fair warning" was given by the Applicable Tax Laws that Mr. Hoffman's conduct was criminal, i.e., the law was objectively ambiguous, then expert testimony will not matter and his conduct cannot be the basis for a conviction. If the Court definitively rules on the meaning of the Applicable Tax Law as applied to the charges in this case, then legal conclusions as to the state of the Applicable Tax Law *now* may be properly excluded, but Mr. Hoffman is confident these rulings would establish that the Challenged Conduct was in fact permitted and certainly not forbidden by the Applicable Tax Law.

In either case, the state of the publicly available Applicable Tax Law at the times charged in the Second Superseding Indictment is not a legal conclusion, but rather a *fact* relevant to Mr. Hoffman's *mens rea* at that time, and as such expert opinion on the state of the law in another jurisdiction (here Louisiana) at a particular point in time is a proper subject for expert testimony as well as other evidence. Expert testimony on this *factual* issue is not a "legal conclusion" or testimony on the "ultimate issue" of Mr. Hoffman's good faith, *mens rea* or "mental state or condition" under Federal Rule of Evidence 704(b), which is an issue for the jury, but only evidence that the jury may consider to help them understand these *mens rea* issues.

Expert opinion pursuant to Rule 702 has been allowed if not required in at least the

-10-

following situations, relevant to the issues of Mr. Hoffman's *mens rea*, as "specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue":

    A.    Expert testimony as to how particular laws are enforced, interpreted and made known in specific factual circumstances.  See *United States v. Davis*, 471 F.3d 783, 789 (7th Cir. 2006);[8]

    B.    Expert testimony as to the state of the law, as relevant to the state of mind of a witness or defendant.  See *United States v. Cavin* 39 F.3d 1299, 1308-09 (5th Cir. 1994) ("*Cavin*");[9]

    C.    Expert testimony as to the meaning of complex technical provisions or "terms of art" in the law not readily understood by the jury.  See *United States v. Savafian*, 528 F.3d 957, 966-67 (D.C. Cir. 2008) (reversible error to exclude such testimony);[10]

    D.    Expert testimony as to unsettled or uncertain laws, to prove that the law's

---

[8] Followed in the Fifth Circuit.  See *United States v. Griffin*, 324 F.3d 330, 347-50 (5th Cir. 2003) as interpreted in *United States v. Rothenberg*, 328 Fed.Appx. 897, 902 (5th Cir. 2009) in instructions on remand.  See also *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 115 (1st Cir. 2003) ("*Gomez*");*United States v. Owen*, 301 F.3d 521, 526-27 (7th Cir. 2002); *United States v. Gold*, 743 F.2d 800, 816-17 (11th Cir. 1984); *United States v. Fogg*, 652 F.2d 551, 555-57 (5th Cir. 1981) *cert. denied* 456 U.S. 905 (1982).

[9] Holding failure to permit such testimony was reversible error, following *United States v. Garber*, 607 F.2d 92, 95-99 (5th Cir. 1979) (*en banc*), one of the fair warning cases.  To the same effect, *United States v. Harris*, 942 F.2d 1125, 1132 n. 6 (7th Cir. 1991), another fair warning case.  See also *Gomez*, 344 F.3d at 115; *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989) (and many cases cited).  *United States v. Clardy*, 612 F.2d 1139, 1153 (9th Cir. 1980).  Naturally, expert testimony must be based on a direct relationship between the claimed defense and the laws in issue, which explain the careful limitations set forth in *United States v. Bryan*, 896 F.2d 68, 72-73 (5th Cir. 1990) and need not result in detailed discussion of the legal bases for any particular opinion if the opinion itself is admitted, which explains the further careful limitations in *United States v. West*, 22 F.3d 586, 577-600 (5th Cir. 1994).

[10] See *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) *cert. denied* 132 S.Ct. 1936 (2012); *United States v. Bilzerian*, 926 F.2d 1285, 1294-95 (2d Cir. 1991) *cert. denied* 502 U.S. 813 (1992); *United States v. Townsend*, 31 F.3d 262, 270 (5th Cir. 1994) *cert. denied*, 553 U.S. 1100 (1995); *Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 837 (8th Cir. 1990).

application is ambiguous or does not provide clear guidance to the defendant. *Cavin*, 39 F.3d at 1309.[11]

Turning to specific opinions that Mr. Hoffman at present proposes to offer, Expert Testimony Motion, Ex. B [Dkt. 259], the government incorrectly presumes that Mr. Hoffman "has yet to find experts to support the opinion." This is untrue. No requirement exists in Federal Rule of Evidence 16 or the Scheduling Order to identify the experts. The general qualifications for the experts selected by Mr. Hoffman and the general bases for their opinions were disclosed and in any event the government may on *voir dire* examine the proposed experts, who as disclosed will have substantial professional experience in the areas for which opinions will be offered.

The government then objects to each proffered area of expert testimony as irrelevant, legal conclusion and also "misleading," which appears to be a restatement of the relevancy objection. Each area of expert opinion identified by Mr. Hoffman meets one or more of the recognized formal bases for expert opinion on legal and accounting issues discussed above and as such are not "legal conclusion" interfering with the Court's or the jury's authority for the reasons set forth in these numerous cases. The areas of expert opinion are relevant to the *mens rea* issues for the reasons discussed herein and in the Mens Rea Motion and Reply. The expert opinion will not be "misleading" merely because the government contends that the Applicable Tax law is irrelevant. The expert testimony will be clear and its probative value defined by the Court's instruction.

Based on the foregoing, Mr. Hoffman requests this Court to deny the Expert Testimony Motion, except to the extent all relief requested in the Mens Rea Motion is granted.

---

[11] See also authorities cited in Notes 7 and 9 above, which all include this ground for admission of expert testimony of law.

        Respectfully submitted,

        *s/Lance C. Unglesby*

        _____
        Lance Unglesby (#29690)
        The Unglesby Law Firm
        246 Napoleon Street
        Baton Rouge, LA 70802
        T: (225) 387-0120
        F: (225) 336-4355
        lance@unglesbylaw.com

### CERTIFICATE OF SERVICE

    I hereby certify that on this 31st day of December, 2014, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent to all counsel of record, by operation of the court's electronic filing system.

        *s/Lance C. Unglesby*
        _____
        Lance C. Unglesby