UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

v.                                          NO. 14-022

PETER M. HOFFMAN,                           SECTION "F"
MICHAEL P. ARATA,
SUSAN HOFFMAN

ORDER AND REASONS

Before the Court are two motions by defendant Peter Hoffman:
(1) motion to exclude statements by defendant Michael Arata as
subject to attorney-client privilege (Federal Rule of Evidence
501); and (2) motion for severance pursuant to Rule 14(a) of the
Federal Rules of Criminal Procedure.[1]  For the reasons that follow,
the motion to exclude statements is DENIED in part insofar as the
Hoffmans assert blanket privilege, but the Court defers ruling as
to specific communications pending the submission of supplemental
papers addressing whether or not specific communications might be
privileged.  The motion for severance is DENIED without prejudice
as premature.

**Background**

In this white collar criminal case, the government charges

_____

[1]The Court notes that the motion to exclude purports to be on
behalf of only Peter Hoffman, but the memorandum in support of the
motion to exclude suggests that both Peter and Susan Hoffman are
the movants.

1

three defendants with wire fraud, mail fraud, conspiracy, aiding and abetting, and, as to Mr. Arata only, also charges false statements to federal agents.[2]

In connection with transforming a dilapidated mansion at 807 Esplanade Avenue into a post-production film studio, the government charges that Peter and Susan Hoffman and Michael Arata (who through companies they owned were partners in various movie industry ventures) committed, aided and abetted, and conspired to commit, mail and wire fraud by submitting false and misleading bank statements and expense reports in order to deceive the State of Louisiana into issuing state tax credits that they had not actually earned and were not entitled to receive.[3]

In late 2013, during the federal government investigation into Louisiana film infrastructure tax credit fraud, the government was approaching a five-year statute of limitations on federal crimes government agents believed had been committed.  It was during this

_____

[2]The charged facts giving rise to this criminal case are more completely summarized in the second superseding indictment, in this Court's Order and Reasons dated July 18, 2014.  See United States v. Hoffman, No. 14-22, 2014 WL 3589563, at *1-3 (E.D. La. July 18, 2014).

[3]The backdrop of this federal criminal case is a Louisiana state law tax credit program, in which individuals and businesses that applied to the State for film infrastructure tax credits were entitled to receive an amount equal to 40% of their qualified and audited film infrastructure expenditures.  Once certified, the applicants could then sell the certification to local businesses and individuals, who would then use the tax credit certifications to offset taxes that the businesses and individuals would otherwise have owed to the State of Louisiana.

time frame that the government was considering whether or not
Michael Arata should be charged with federal crimes along with
Peter and Susan Hoffman in connection with certain infrastructure
tax credit applications that had been submitted to the State.[4]   On
December 20, 2013 the government moved to compel Michael Arata to
answer questions and produce documents; Arata had refused to do so
because Peter Hoffman had asserted the attorney-client privilege.
Judge Milazzo ordered that Arata appear *in camera* for examination
by the Court on January 14, 2014.   After meeting with him, Judge
Milazzo found that Arata had no attorney-client relationship with
Hoffman with regard to 807 Esplanade.   Judge Milazzo then denied
Peter Hoffman's motion for reconsideration, again finding that
there was no attorney-client privilege because Arata and Hoffman
were business partners in 807 Esplanade.

On more than one occasion during the government's
investigation, Mr. Arata, who was represented by counsel, met with
FBI agents and government attorneys.   One such meeting took place
on January 27, 2014 at the FBI's New Orleans Field Office.   Michael
Arata was present with his attorneys, Eddie Castaing and Billy
Gibbens.   AUSA Dall Kammer was also present, along with Melanie

---

[4]Michael Arata is a Louisiana businessman and an attorney.
Peter Hoffman also does business in Louisiana and is an attorney,
although he is not licensed in this state.   Mr. Arata owned and
operated Voodoo Studios, LLC and Leap Film Funds II, LLC, both
Louisiana companies.   Through his companies, Arata was a part owner
of 807 Esplanade and was active in the project's efforts applying
for Louisiana film infrastructure tax credits.

Haggarty, a forensic accountant with the FBI. After Mr. Arata, his counsel, and AUSA Kammer signed a proffer agreement, FBI Special Agent Robert Blythe conducted the questioning;  the substance of the interview, the information provided by Mr. Arata to interviewing agents, was transcribed by the Special Agent Blythe in a 10-page Form 302.

At the end of the three-hour meeting, the participants discussed meeting for another session but, instead, ten days later, on February 6, 2014, a grand jury returned a six-count Indictment, charging Peter Hoffman and Michael Arata with conspiracy (Count 1), as well as aiding and abetting, and actually committing wire fraud (Counts 2 - 6), in violation of 18 U.S.C. §§  371, 2, and 1343. After first superseding on April 3, 2014,[5] the government filed a 25-count second superseding indictment on May 15, 2014, charging the Hoffmans and Mr. Arata with conspiring to commit, committing, and aiding and abetting, wire and mail fraud, in violation of 18 U.S.C.§§ 371, 1343, 1341, and 2.  The second superseding indictment also charges Mr. Arata with making false statements to federal

---

[5]This Superseding Indictment filed on April 3, 2014 charged Susan Hoffman for the first time, and added additional charges against the other defendants: conspiracy (Count 1), wire fraud and aiding and abetting against Peter Hoffman and Michael Arata (Counts 2 - 5), wire fraud and aiding and abetting against all three defendants (Counts 6 - 17), mail fraud and aiding and abetting against all three defendants (Count 18), and false statements against Michael Arata only (Counts 19 - 22).

4

agents, in violation of 18 U.S.C. § 1001.[6]

Counts 22 through 25 (four false statement counts) charge that Mr. Arata made false statements to FBI agents during the January 27, 2014 proffer session.  Whether or not the government may in its case-in-chief introduce Arata's proffered statements has been the subject of prior motion practice.  See United States v. Arata, No. 14-22, 2014 WL 5040721 (E.D. La. Oct. 8, 2014) and United States v. Arata, No. 14-22, 2014 WL 7330618 (E.D. La. Dec. 18, 2014).  Mr. Arata sought dismissal of Counts 22 through 25 on the ground that, by bringing those charges the government breached a proffer agreement.  In denying the motion without prejudice on October 8, 2014, the Court examined the terms of the written proffer agreement.  United States v. Arata, No. 14-22, 2014 WL 5040721 (E.D. La. Oct. 8, 2014).  The Court determined that "the government has not breached the proffer agreement simply by presenting to the grand jury and including the false statement counts in the superseding and second superseding indictment[;] the government did not need to seek the Court's advance permission to charge Mr. Arata."  See Arata, 2014 WL 5040721, at *6 (emphasis added).  Nevertheless, the Court noted that the parties' submissions and, thus, the Court's ruling left outstanding "an obvious unresolved

---

[6]Count 1 alleges conspiracy, Counts 2-5 allege wire fraud as against only Messrs. Hoffman and Arata, Counts 6-20 allege wire fraud against all three defendants, Count 21 alleges mail fraud, and Counts 22 - 25 charge only Michael Arata with making false statements to federal agents in violation of 18 U.S.C. § 1001.

issue that must be dealt with, pre-trial[:] whether or not Mr. Arata materially breached an agreement with the government such that the government is absolved of any of its obligations under the proffer agreement." Id. Thereafter, the government filed a motion to vitiate the proffer agreement with Arata; in so doing, the government sought a judicial determination that Mr. Arata breached the proffer agreement, thereby absolving the government from its conditional promise not to use his proffer statements in its case-in-chief. Arata opposed the motion and requested an evidentiary hearing. The Court granted Arata's request for an evidentiary hearing and deferred ruling on the government's motion pending a limited evidentiary hearing. United States v. Arata, No. 14-22, 2014 WL 7330618 (E.D. La. Dec. 18, 2014). On December 18, 2014, the Court summarized at some length the parties' contentions and their characterization of the documentary evidence. But the Court deferred ruling on whether the government had proven by a preponderance of the evidence that Arata had materially breached the proffer agreement's requirement that he "be completely truthful." Meanwhile, Mr. Arata also challenged the admissibility of his proffered statements on an independent ground: he sought an order precluding the government from using his proffer statements in the government's case-in-chief on the ground that his statements constitute plea discussions rendered inadmissible by Federal Rule of Evidence 410. An evidentiary hearing was held on February 25,

2015[7] in which evidence was presented on the government's motion to vitiate the proffer agreement and on Arata's motion to preclude the government from using his January 27 statements in its case-in-chief.  On March 6, 2015 the Court issued its Order and Reasons in which it granted the government's motion to vitiate the proffer agreement on the ground that the government had carried its preponderance burden as to the legal fees issue, and denied Arata's motion *in limine* regarding Federal Rule of Evidence 410 on the ground that there was no evidence that there were any plea discussions during the proffer.

Almost a year after Judge Milazzo issued her rulings regarding Hoffman's attorney-client privilege claims, Peter and Susan Hoffman now seek to exclude all statements made by Arata in his January 27, 2014 proffer session with the FBI, as well as all communications between him and Arata "relating to the requirements to obtain tax credits under Louisiana law."  Peter Hoffman also urges the Court to sever his trial from Mr. Arata's.

I.
A.

Peter Hoffman asserts that Michael Arata was counsel for Seven Arts Pictures Louisiana LLC, and that "Arata has made statements disclosing information learned through the course of his

---

[7]One witness, Elizabeth Mace, who had traveled from Germany, testified on January 7, 2015 before the Court continued the evidentiary hearing on Mr. Arata's motion.

7

representation."   Asserting the attorney-client privilege and invoking Federal Rule of Evidence 501, Peter and Susan Hoffman seek to exclude certain statements or information from evidence at trial.   In particular, the Hoffmans seek to exclude the statements made by Michael Arata to the FBI on January 27, 2014, as reflected in the Form 302, in which Special Agent Blythe memorialized his interview with Michael Arata, as well as "all documents or other tangible things ... between Mr. Arata and Mr. Hoffman relating to the requirements to obtain tax credits under Louisiana law."   More specifically, the Hoffmans identify as privileged certain exhibits (Exhibits A, B, C, D, E, G, H, J, and K) attached to Mr. Arata's prior motion to dismiss or sever on the ground of prejudicial joinder.  Each of these exhibits, Hoffman submits, are confidential communications whose predominant purpose was legal advice under the film tax credit statute and regulations.

The government urges the Court to deny the Hoffmans' motion to exclude statements for four reasons: (1) they have not satisfied their burden of proof; (2) no privilege exists because Arata and Hoffman were business partners; (3) the crime-fraud exception applies; and (4) any privileges have been waived.

*B.*

Federal Rule of Evidence 501 provides:

The common law–as interpreted by the United States courts in light of reason and experience– governs a claim of privilege unless any of the following provides otherwise:

- the United States Constitution;
- a federal statute; or
- rules prescribed by the Supreme Court.
. . . .

The purpose and scope of the attorney-client privilege is well-settled:

> The purpose of the privilege is to "encourage full and frank communication between lawyers and their clients and thereby promote broader public interests in the observance of law and administration of justice." On the other hand, because the privilege "has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose."
> The assertor of the lawyer-client privilege must prove:
> (1) that he made a confidential communication; (2) to a lawyer ...; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.

United States v. Robinson, 121 F.3d 971, 974 (5th Cir. 1997)(internal citations omitted).  The attorney-client privilege "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client."  Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).  Notably, the privilege is not absolute and it "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."  Id. 449 at 395.  Toward that end, "the attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents[; rather, it] must be specifically asserted with respect to particular documents."  See United States v. El Paso Co., 682 F.2d 530, 539 (5th Cir. 1982).

9

If the assertor of the privilege proves entitlement to the privilege with respect to specific communications, the privilege nevertheless may be overcome if the party opposing its assertion makes a prima facie showing that the communication "is intended 'to further continuing or future criminal or fraudulent activity.'" United States v. Edwards, 303 F.3d 606, 618 (5th Cir. 2002)(citations omitted).  This crime-fraud exception recognizes that the privilege will "protect the confidences of wrongdoers", but when the advice sought relates to future wrongdoing, the privilege goes beyond that which is necessary to achieve its purposes.  See United States v. Zolin, 491 U.S. 554, 562-63 (1989).

The Court's task is complicated by the undisputed facts that Mr. Arata was a business partner, co-owner, and investor in the 807 Esplanade project, but he is also a lawyer, who drafted legal opinions on behalf of the project.  Hoffman urges, in conclusory fashion, that his communications with Arata were communications made for the primary purpose of securing a legal opinion, legal services, or assistance in a legal proceeding.  However, it is Hoffman's burden to show as to each particular communication he claims is privileged, that Seven Arts was consulting Arata in his capacity as lawyer and not in his capacity as co-venturer.  See United States v. Davis, 636 F.2d 1028, 1044 (5th Cir. 1981)("An attorney who acts as his client's business advisor, or his agent for receipt or disbursement of money or property to or from third

parties is not acting in a legal capacity, and records of such transactions are not privileged); In re Vioxx Products Liab. Litig., 501 F. Supp. 2d 789, 805 (E.D.La. 2007)(Fallon, J.) (citation omitted)("An attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction. This cannot be gotten around by the simple expedient of putting a lawyer in the shoes of the executive."); Cissel, Federal Criminal Trials, 4th ed. (1996), Section 19-2(b)(2), p. 483 ("[F]or a communication to qualify for the privilege the client must be consulting the lawyer as a lawyer, and not in the capacity as a participant in a business transaction."); Weinstein's Federal Evidence, Second Ed., 503.13[3][c] ("If an attorney joins an entrepreneur in a business deal, the attorney's role generally is that of business advisor, even though the attorney may be rendering incidental legal advice. Payment of the legal fee in the form of a 'piece' of the business, either by stock ownership or a percentage of profits, generally makes the attorney a part of the enterprise rather than legal counsel for the purposes of the privilege."). This is a tall order for Hoffman, in light of the fact that Arata was part-owner, had a financial interest in the project, worked with Hoffman to obtain tax credits for the project in furtherance of their business goals, and, indeed, that, as some evidence suggests, it was Mr. Hoffman's understanding that Arata was being compensated for any legal work

on the project by virtue of his ownership interest.

That Michael Arata drafted a few opinion letters, acted as middle man with the auditors regarding infrastructure tax credit applications, confirmed his legal services to the auditor, and sent a letter to Mr. Hoffman on August 6, 2009 terminating his "representation"[8] does not compel a finding that Arata was Seven Arts's lawyer to the exclusion of his role as business partner.[9] To the contrary, because it is undisputed that Michael Arata and Peter Hoffman were business partners on the 807 Esplanade project, Mr. Hoffman cannot simply cloak with the privilege all communications he had with Mr. Arata "relating to the requirements to obtain tax credits under Louisiana law." The attorney-client privilege "is to be construed narrowly to apply only where its application would serve its purposes; where it is doubtful that a client means to communicate confidentially, the privilege does not

---

[8]Even in his August 2009 termination letter, in which Mr. Arata references many "on-going matters" for which it is implicit that Mr. Arata represented Mr. Hoffman as legal counsel, Mr. Arata also writes:

> ...
> I resign from any official capacity I have with Seven Arts Pictures Louisiana, LLC. Since I have an ownership interest in the property by virtue of my membership in Voodoo Studios, LLC, I will continue to assist in maximizing the value of the property and the project.
> ....

[9]Of course, the opinion letters and "internal memoranda" themselves are not privileged, considering that they were shared with third parties. "It is vital to a claim of privilege that the communication have been made and maintained in confidence." Robinson, 121 F.3d at 976 (citation omitted).

attach, as the client would have acted similarly even without the privilege." See Robinson, 121 F.3d at 975.  The Hoffmans fail to persuade the Court that, among them and Mr. Arata, business partners, all communications -- legal advice and business discussions -- are protected by the attorney/client privilege.

Nevertheless, the Court turns to consider those specific documents Mr. Hoffman claims are privileged.  The Court first observes that it is not clear whether or not these documents (many of them emails) will be used at trial as evidence (and it is not clear as to Exhibit A in particular whether the Court has the complete email chain, which of course could be critical in construing whether a communication was confidential).  The Court will not give advisory rulings.  Moreover, Mr. Hoffman did not identify the documents over which he was asserting the privilege until he filed his reply papers; thus, the government has not articulated its position as to whether any of these materials might be privileged, or whether any privilege might have been waived. More briefing is required.

## II.
### A.

Peter Hoffman next seeks relief under Rule 14(a) of the Federal Rules of Criminal Procedure, for prejudicial joinder, which he says requires severance.[10]  When considering Mr. Arata's request

---

[10]Mr. Arata previously requested that the Court dismiss Counts 1 through 21 of the second superseding indictment as against him,

for dismissal or severance, the Court has already ruled that "the government charges a series of acts unified by substantial identity of facts. For this reason, the Court is satisfied that the defendants and charges are properly joined under Rule 8." See United States v. Arata, No. 14-22, 2014 WL 7330618 (E.D. La. Dec. 18, 2014). Mr. Hoffman does not quarrel with this finding; instead, Mr. Hoffman advances two grounds that he says support severance for prejudicial joinder. First, he invokes the Bruton doctrine based on his Sixth Amendment right to confront witnesses against him. Second, he invokes Zafiro's rule of transference of guilt or overspill. A claim of prejudice resulting from joinder triggers Rule 14. However, Hoffman has not demonstrated entitlement to Rule 14 relief based on Bruton or Zafiro.

*B.*

Recognizing that joinder might in some cases prejudice a defendant, or even the government, Rule 14(a) of the Federal Rules of Criminal Procedure invests the Court with the discretion to "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). When defendants are indicted together, joint trials are favored, because "[t]hey promote efficiency and serve the interests

---

or sever his trial, on the ground that the prejudice from all of the Overt Acts, substantive counts, and evidence that will be presented, which follow the first application for film tax credits, will have a prejudicial spillover effect. The motion was denied on December 18, 2014.

of justice by avoiding the scandal and inequity of inconsistent verdicts." Zafiro v. United States, 506 U.S. 534, 537 (1993) (internal quotation marks and citation omitted). This is especially true when, as here, a conspiracy is charged. See United States v. Perez, 489 F.2d 51, 65 (5th Cir. 1973).

Given the efficiencies undergirding and the judicial system's preference for joint trials of defendants indicted together, a defendant "must overcome significant obstacles" to prevail on a request to sever his trial from that of his co-defendants. See United States v. McCrae, 702 F.3d 806, 821 (5th Cir. 2012). That is, once properly joined in an indictment, a defendant must show "specific and compelling prejudice" to be entitled to severance of a joint trial. United States v. Krenning, 93 F.3d 1257, 1267 (5th Cir. 1996). A severance is appropriate under Rule 14 only where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. Severance could be appropriate, for example, where evidence that is probative of one defendant's guilt but inadmissible against another defendant presents a risk of prejudice. Id. Severance should not be granted where less drastic measures, such as curative jury instructions, will suffice. Id. Finally, the Court notes that motions to sever are rarely granted, and a decision to deny such a motion will be reviewed on appeal

15

only for abuse of discretion.  <u>Perez</u>, 489 F.2d at 65.

    1.  <u>Bruton</u>

    In support of severance, Hoffman points out that the government plans to use Mr. Arata's extrajudicial statements in its case-in-chief, with no assurance that Mr. Hoffman will have the opportunity to cross-examine Mr. Arata at trial.  He first invokes the <u>Bruton</u> doctrine, in which the Supreme Court endorsed "a narrow exception" to the general presumption indulged in law, that is, that jurors follow instructions; <u>Bruton</u> holds that "a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant."  <u>See Richardson v. Marsh</u>, 481 U.S. 200, 206-08 (1987)(citing <u>Bruton v. United States</u>, 391 U.S. 123 (1968)).

    In <u>United States v. Powell</u>, 732 F.3d 361, 376-77 (5th Cir. 2013), the Fifth Circuit comprehensively summarized <u>Bruton</u> and its progeny:

> Under the Confrontation Clause, a criminal defendant is guaranteed the right to "be confronted with the witnesses against him."  U.S. CONST. amend. VI.  The Supreme Court held in *Bruton* that a defendant's Confrontation Clause rights were violated by the admission of a non-testifying co-defendant's confession that directly implicated the defendant in the criminal act, even though the trial court issued a limiting instruction to the jury.  [*Bruton v. United States*, 391 U.S. 123, 126 (1968).]  The scope of *Bruton* was later clarified in *Richardson v. Marsh*, in which the Court found a non-testifying co-defendant's confession

16

constitutionally admissible when it was redacted to include references only to the non-testifying co-defendant and a third person, not the defendant, and the trial court gave a limiting instruction to the jury. [481 U.S. 200, 203 (1987).] Significant in *Richardson* is the fact that the confession did not implicate the defendant on its face.  Any implication of the defendant in the admitted statement required linkage with other trial evidence.  *Id. Richardson*'s scope was clarified in *Gray v. Maryland*, 523 U.S. 185 (1998), in which the Court determined that modifying a non-testifying co-defendant's statement by replacing the defendant's name with the term "deleted" or "deletion" is insufficient to avoid implicating the defendant.

The key analytic factor in *Richardson* is that the statement did not clearly refer to the defendant and could only be linked through additional evidentiary material.  In *United States v. Vejar-Urias*, 165 F.3d 337 (5th Cir. 1999), we determined that a defendant's Confrontation Clause rights were violated when a non-testifying co-defendant's inculpatory statement was altered by using the word "someone" instead of the defendant's name.  Our logic tracked the Court in *Richardson*: "Where ... it is obvious from consideration of the confession as a whole that [the statement refers] to the defendant, then admitting it does violate *Bruton*...." *Id.*

Hoffman submits that Mr. Arata made statements in his FBI 302 that may be directly incriminating, specifically refer to him (Mr. Hoffman), and will likely be used by the government not only in support of its false statement charges against Mr. Arata, but also to cross-examine Mr. Hoffman, who says he plans to testify at trial.  Because he has no assurance that he will have an opportunity to cross-examine Mr. Arata during their joint trial, Mr. Hoffman insists that the only way to avoid deprivation of his constitutional confrontation clause rights is to sever his trial.

The government counters that it attempted to reach an agreement with Peter Hoffman's counsel on <u>Bruton</u> issues, but defense counsel suggested that he did not believe that redaction could cure the <u>Bruton</u> problem.  The government submits that Arata's statements are exculpatory and those portions of the statement that cast aspersions on Hoffman can be redacted.

The Court has some concerns regarding whether or not the FBI 302 can be redacted to adhere to the <u>Bruton</u>/<u>Richardson</u>/<u>Gray</u> trilogy, given that many of Arata's statements as memorialized in the FBI 302 refer directly to Mr. Hoffman and can be considered inculpatory in the context of the government's charges.  However, even assuming as the Court must, that Mr. Arata will not testify, severance is premature; the Court finds that it may be possible to avoid a <u>Bruton</u> problem and prefers to consider the parties' proposal as to how to cure the potential <u>Bruton</u> problem.[11]  Mr. Hoffman has failed to point specifically to inculpating statements in Mr. Arata's 302 as opposed to statements that merely reflect negatively about Mr. Hoffman in Arata's opinion.

2.   <u>Zafiro</u>

Alternative to his <u>Bruton</u> theory of prejudice, Mr. Hoffman

---

[11]Hoffman contends that redaction is not an option unless the government eliminated all references to Mr. Hoffman's conduct or state of mind from the Form 302 so that the jury does not know Mr. Arata ever mentioned Mr. Hoffman in any manner that was derogatory to Mr. Hoffman or reflected on his good faith, credibility, or intent.

submits that, if his trial is not severed from that of Mr. Arata, the potential for transference of guilt or overspill evidence based on the false statement charges implicating only Mr. Arata will prejudice Hoffman, who is not charged with the alleged false statement bad acts.   The government counters that the false statement charges against Arata are not the sort of inflammatory, unrelated charges that would "prevent the jury from making a reliable judgment about guilt or innocence" in a joint trial, and a limiting cautionary instruction can solve any potential prejudice.   The Court agrees.

In Zafiro v. United States, the Supreme Court held that, where defendants are properly joined under Rule 8(b), "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." 506 U.S. 534, 538-39 (1993)(declining to endorse a bright-line rule requiring severance whenever co-defendants have conflicting defenses and pointing out that Rule 14 does not require severance even if prejudice is shown).   The Court went on to note that the Bruton doctrine presented one such risk of prejudice, but that "the risk of prejudice will vary with the facts in each case" and that, even if there is a high risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of

prejudice." Id. at 539.

Here, putting aside the potential Bruton issue,[12] Mr. Hoffman fails to persuade at this pre-trial stage that the jury will be unable to reliably judge his guilt or innocence in the context of a joint trial. See id. That Arata is charged with false statements in addition to the charges in common to all three defendants does not make this an exceptional case in which severance is mandated under Zafiro. At this stage, the Court cannot agree that the alleged false statements amount to "specific and compelling prejudice," or otherwise risk a spillover effect incurable by careful jury instructions. See United States v. Krenning, 93 F.3d 1257, 1267 (5th Cir. 1996); see also United States v. McCrae, 702 F.3d 806 (5th Cir. 2012).

Accordingly, IT IS ORDERED: that Peter and Susan Hoffman's motion to exclude statements by defendant Michael Arata as subject to attorney-client privilege is DENIED in part insofar as they assert a blanket privilege; the Court defers ruling on the motion pending supplemental briefing as to specific communications: by March 25, 2015, Mr. Hoffman must submit supplemental papers identifying precisely which specific communications he asserts are privileged and why,[13] and by March 31, 2015, the government must

---

[12]The Court is not convinced that Mr. Hoffman's severance arguments are independent of one another.

[13]Insofar as Mr. Hoffman has identified all such communications in his reply paper and during the oral hearing, he does not need to

file a response directed to those specific communications Mr. Hoffman submits are privileged.  IT IS FURTHER ORDERED: that Peter Hoffman's motion for severance is hereby DENIED without prejudice as premature; the Court orders all counsel to submit briefing, along with a proposal for redacting Mr. Arata's FBI 302 so as to avoid offending Bruton, five working days prior to trial.[14]  The Court does not, on the present record, wholly accept the government's position that Bruton/Zafiro are not at risk.

New Orleans, Louisiana, March 20, 2015

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

repeat his briefing, but must so advise the Court and the government.

[14]The threshold issue of the admissibility of Mr. Arata's FBI 302 should be addressed in the parties' papers.  And, in light of the concerns articulated by Mr. Arata's counsel during the oral hearing regarding how redaction of the 302 might potentially prejudice his client's defense, counsel for Mr. Arata may submit papers addressing this issue and, indeed, should submit any response he has to the proposed redacted 302 prior to trial.