UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 14-022 |
| PETER M. HOFFMAN,<br>MICHAEL P. ARATA,<br>SUSAN HOFFMAN | SECTION "F" |

ORDER AND REASONS

Before the Court are two motions: motion *in limine* for rulings on three issues of law regarding mens rea by Peter Hoffman and Michael Arata; and motion *in limine* to determine an issue of law regarding benefit of the bargain by Peter Hoffman, Susan Hoffman, and Michael Arata.[1]  For the reasons that follow, the motions are DENIED.

**Background**

In this white collar criminal case, the government charges Peter and Susan Hoffman and Michael Arata with wire fraud, mail fraud, conspiracy, aiding and abetting, and, as to Mr. Arata only, also charges false statements to federal agents.[2]

The backdrop of this federal criminal case is a Louisiana

---

[1]On March 16, 2015 the Court granted Mr. Arata's motion to adopt Mr. Hoffman's motions *in limine*.

[2]The facts giving rise to this criminal case are more completely summarized in the second superseding indictment, in this Court's Order and Reasons dated July 18, 2014.  See United States v. Hoffman, No. 14-22, 2014 WL 3589563, at *1-3 (E.D. La. July 18, 2014).

1

state law tax credit program. In 1992, to encourage local development of a motion picture and television industry, the State of Louisiana enacted the Louisiana Motion Picture Incentive Act, La.R.S. § 47:6007.  By law, the State provided incentives in the form of tax credits for State-certified infrastructure projects, as well as for production projects.[3]  Individuals and businesses making motion pictures were eligible to receive tax credits, which were calculated as a percentage of the companies' qualified expenditures in Louisiana. Infrastructure expenditures included the purchase, construction, and use of facilities that were directly related to and utilized for motion picture production in Louisiana. To qualify for infrastructure tax credits, all funds had to be expended, and such expenditures had to be verified by an independent Louisiana Certified Public Accountant.

This tax credit program is administered by the Office of

---

[3] La.R.S. § 47:6007 has been amended several times. Act 456 of 2005 authorized income tax credits for State-certified infrastructure projects.  With respect to these infrastructure projects, Act 456 of 2005 provided that if the total base investment was greater than $300,000, each investor was allowed a tax credit of 25% of the base investment, and an additional 15% tax credit was allowed until January 1, 2008; the available tax credit totaled 40%.  The relevant version of the Act for the purposes of the criminal charges at issue in this case is the amendment accomplished by Act 456, effective July 1, 2007.  Act 456 provided for the infrastructure tax credits authorized by Act 456 of 2005 through January 1, 2009, but imposed limits on those tax credits for applications filed after August 1, 2007: a six-month deadline was imposed and a $25 million per project cap on the tax credits was also imposed. The film infrastructure tax credits at issue in this matter were repealed in 2009, but the film production tax credits remain in effect.

Entertainment Industry Development, an office within the Department of Economic Development. The administrative review and approval process was described by the Louisiana Supreme Court as follows: To receive an initial certification letter from the State approving a project as a State-certified infrastructure project, an applicant must file an application for motion picture investor tax credits with the OEID, and obtain approval of the project from the DED, OEID, and the Department of Administration. See Red Stick Studio Development, L.L.C. v. Louisiana, 56 So.3d 181, 183-84 (La. 2011) (citing La.R.S. 47:6007 (2005)). After an initial certification letter is issued, and accepted by the applicant, the applicant must then submit to those same agencies a cost report of infrastructure expenditures; the report must be audited and certified by an independent certified public accountant. Id. at 183 n.4.  Based on the applicant's submission, the relevant state agencies determine whether those infrastructure expenditures qualify for tax credits; if so, those agencies will certify the tax credits based upon the approved infrastructure expenditures. Id.  Once certified, tax credits could be applied to offset against the Louisiana taxpayer's income tax liability, or they may be sold.  Id.

In renovating the property at 807 Esplanade Avenue with the vision of turning it into a post-production film studio, Peter Hoffman, Susan Hoffman, and Michael Arata, through their respective companies, availed themselves of the State film infrastructure tax

3

credit program.[4] They submitted three applications and supporting documents to the State for tax credits. As statutorily required, the defendants first submitted the 807 Esplanade expenditures to auditors for verification. To verify the expenditures, the auditors requested proof of payment such as invoices, bank transfers, bank statements, and other corporate financial records. Based on this information, the auditors created audit reports detailing the defendants' claimed expenditures on 807 Esplanade. These audit reports were submitted as part of the February 26, 2009, January 20, 2010, and July 3, 2012 submissions to the State for film infrastructure tax credits.

---

[4]On May 29, 2008, the State of Louisiana sent to Seven Arts Post an infrastructure project pre-certification letter in which the State lays out the initial terms of the tax credit program and agreement between the State and the developers of 807 Esplanade. The letter states:

> In order to qualify for these credits, all funds invested must actually be expended on the state-certified infrastructure project with accounting certification in accordance with Departmental guidelines for the claimed expenditures included. Again, as noted above, while your project indicates an anticipated total of $9,000,000, final certification and granting of tax credits under these provisions will be based on the following: the actual amount expended by the project, verification in the form of an audit conducted by an independent Louisiana Certified Public Accountant that these expenditures were made and meet the requirements of applicable law, and approval by DED, OIED and DOA.

In exchange for these expenditures submitted to the State, "[i]f the total base investment is greater than three hundred thousand dollars, each investor shall be allowed a tax credit of forty (40%) of the base investment made by that investor."

On June 19, 2009 the State issued $1,132,480.80 in tax credits to Seven Arts Production Louisiana, LLC as a result of the first application, the February 26, 2009 submission.  Mr. Arata paid cash to the partnership for these tax credits, at a discounted price, through his company LEAP Film Fund II, LLC, then, the government claims, sold the tax credits to local businesses and individuals for profit.  The State did not issue tax credits based on the January 20, 2010 and July 3, 2012 applications.

On February 6, 2014 a grand jury returned a six-count indictment, charging Peter Hoffman and Michael Arata with conspiracy (Count 1), as well as aiding and abetting, and actually committing wire fraud (Counts 2 - 6), in violation of 18 U.S.C. §§ 371, 2, 1343.  After first superseding on April 3, 2014,[5] the government filed a 25-count second superseding indictment on May 15, 2014, charging the Hoffmans and Mr. Arata with conspiring to commit, committing, and aiding and abetting, wire and mail fraud, in violation of 18 U.S.C. §§§§ 371, 1343, 1341, and 2, and also charging Mr. Arata with making false statements to federal agents.[6]

---

[5]This superseding indictment filed on April 3, 2014 charged Susan Hoffman for the first time, and added additional charges against the other defendants: conspiracy (Count 1), wire fraud and aiding and abetting against Peter Hoffman and Michael Arata (Counts 2 - 5), wire fraud and aiding and abetting against all three defendants (Counts 6 - 17), mail fraud and aiding and abetting against all three defendants (Count 18), and false statements against Michael Arata only (Counts 19 - 22).

[6]Count 1 alleges conspiracy, Counts 2-5 allege wire fraud as against only Messrs. Hoffman and Arata, Counts 6-20 allege wire

With respect to Count 1, which alleges conspiracy to use the mail or wires in furtherance of the defendants' scheme to defraud, the government alleges 37 specific overt acts, and charges that the defendants accomplished their conspiracy, and took steps to conceal from the State their scheme, when they: 1). prepared and filed material false and misleading tax credit applications, fraudulently claiming that certain expenditures had been made to 807 Esplanade when those expenditures had not been made; 2). prepared and submitted to the auditors and to the State materially false and misleading internal accounting books and records and payment receipt certifications to make it appear as if certain expenditures had been made and certain items had been paid for and received when those expenditures had not been made and those items had not been paid for or received; 3). prepared and submitted to the auditors and the State materially false and misleading invoices in support of fraudulent expenditures; 4). conducted materially false and misleading circuitous bank transfers of money to make it appear that certain items were paid for when those items had not been paid for; and 5). prepared and submitted to the auditors proofs of payment that were materially false and misleading in that only outgoing money transfers were disclosed to the auditors when the money had actually been immediately returned to the original bank

---

fraud against all three defendants, Count 21 alleges mail fraud, and Counts 22 - 25 charge only Michael Arata with making false statements to federal agents in violation of 18 U.S.C. § 1001.

account and those return money transfers were not disclosed to the auditors.

As to the wire fraud charges (Counts 2 - 5 against Peter Hoffman and Michael Arata and Counts 6 - 20 against all three defendants), the government alleges:

> Beginning on or about March 1, 2006, and continuing until on or about July 3, 2012, in the Eastern District of Louisiana and elsewhere, the defendants, Peter Hoffman, Michael Arata, Susan Hoffman ... did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises by submitting and causing to be submitted materially false, misleading and fraudulent information to the auditors and to the State of Louisiana for the purpose of obtaining infrastructure tax credits relative to 807 Esplanade. All in violation of Title 18, United States Code, Sections 1343 and 2.

With respect to the mail fraud charge (Count 21), the government alleges:

> On or about February 3, 2010 ... the defendants, Peter Hoffman, Michael Arata, Susan Hoffman ... for the purpose of executing and attempting to execute, and in furtherance of, the scheme and artifice to defraud set forth in paragraph 2 of Counts 6 through 20 above, did knowingly send and cause to be sent, delivered, and moved by private commercial interstate carriers correspondence dated February 2, 2010, addressed to an auditor for the State of Louisiana with attached exhibits, corporate agreements, and invoices for project management, equipment consulting, and office rent. All in violation of Title 18, United States Code, Sections 1341 and 2.

On July 18, 2014, the Court denied the defendants' motion to dismiss Counts 1 through 21 of the second superseding indictment. United States v. Hoffman, No. 14-22, 2014 WL 3589563, at *9-11 (E.D.La. July 18, 2014). After much motion practice, with the

trial approaching, the defendants now seek rulings on certain issues of law concerning the government's burden to prove certain aspects of mens rea and benefit of the bargain in the context of the wire and mail fraud charges.

I.

Peter Hoffman and Michael Arata seek a pretrial ruling on three issues of law regarding the mens rea element of their mail and wire fraud charges. They submit that the Court should rule that:

1. The United States is required to establish as a matter of law that Louisiana Revised Statutes Annotated § 47:6007 as in effect in 2007, the Regulations promulgated thereunder, and official acts of the State of Louisiana in the form of Revenue Rulings ("Applicable Louisiana Tax Law") must clearly and unambiguously forbid and make illegal each act or conduct that the United States alleges in the Second Superseding Indictment is a violation of 18 U.S.C. §§ 1341 and 1343, at the time of the acts or conduct so alleged occurred.

2. The Applicable Louisiana Tax Law did not at the times alleged in the Second Superseding Indictment clearly and unambiguously forbid and make illegal the following acts or conduct therein alleged:

   A. Claims for "base investment" under Applicable Louisiana Tax Law confirmed through formal cash transfer or alleged "circular payments."
   B. Claims for "base investment" under the Applicable Louisiana Tax Law for services not yet completed or equipment not yet delivered.
   C. Claims for "base investment" under the Applicable Louisiana Tax Law in the form of "related party" contracted commitments due to persons affiliated with the claimant, Seven Arts Pictures Louisiana LLC, for development for equipment and/or interest.

3. The United States is required to prove at trial beyond a reasonable doubt that Defendant[s] Peter Hoffman [and Michael Arata] did not have a good faith belief that his acts or

>conduct were a violation of the Applicable Louisiana Tax Law and that Defendant[s] Peter Hoffman [and Michael Arata] through such acts or conduct made a voluntary, intentional violation of a known legal duty.

In support of this proposed ruling, the defendants contend that the government must prove beyond a reasonable doubt that the challenged conduct was an intentional violation of a known duty and not based on a good faith belief that the challenged conduct was not criminal. The defendants also contend that the Act, La.R.S. § 47:6007, specifically approves related party transactions and its regulations requiring payment of base investment were not promulgated until after the first two applications were submitted by the defendants. How is this, they ask, a criminal scheme to defraud? Their applications did not violate state law, they submit, and the defendants cannot be said to have fair warning that it did.

The government counters that all of Peter Hoffman and Michael Arata's arguments are defeated by one well-settled point of law: mail and wire fraud do not require proof that a defendant violated a legal duty and the government's burden of proof respecting mens rea is to prove beyond a reasonable doubt that the defendants had a specific intent to defraud. The Court agrees.

The Fifth Circuit instructs that the elements of mail or wire fraud that must be charged and proved by the government are: (1) the defendant devised or intended to devise a scheme to defraud, (2) the mails [or wires] were used for the purpose of executing, or

attempting to execute, the scheme, and (3) the falsehoods employed in the scheme were material." United States v. McMillan, 600 F.3d 434, 447 (5th Cir. 2010).  The Fifth Circuit Pattern Jury Instructions provide:

> Title 18, United States Code, Section 1343, makes it a crime for anyone to use interstate wire communications in carrying out a scheme to defraud.
>
> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> First: That the defendant knowingly devised or intended to devise any scheme to defraud, that is (describe scheme from the indictment);
>
> Second: That the scheme to defraud employed false material representations [false material pretenses] [false material promises];
>
> Third: That the defendant transmitted [caused to be transmitted] by way of wire communications, in interstate commerce, any writing for the purpose of executing such scheme; and
>
> Fourth That the defendant acted with a specific intent to defraud.
>
> A "scheme to defraud" means any plan, pattern, or course of action intended to deprive another of money or property.
>
> A "specific intent to defraud" means a conscious, knowing intent to deceive or cheat someone.
>
> A representation [pretense] [promise] is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity.  A representation would also be "false" if it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with the intent to defraud.
>
> A representation [pretense] [promise] is "material" if it has a natural tendency to influence, or is capable

of influencing, the decision of the person or entity to which it is addressed.

It is not necessary that the government prove all of the details alleged in the indictment concerning the precise nature and purpose of the scheme. What must be proved beyond a reasonable doubt is that the defendant knowingly devised or intended to devise a scheme to defraud by means of false or fraudulent pretenses, representations, or promises that was substantially the same as the one alleged in the indictment.

It is also not necessary that the government prove that the material transmitted by wire communications was itself false or fraudulent, or that the use of the interstate wire communications facilities was intended as the specific or exclusive means of accomplishing the alleged fraud. What must be proved beyond a reasonable doubt is that the use of the interstate wire communications facilities was closely related to the scheme because the defendant either wired something or caused it to be wired in interstate commerce in an attempt to execute or carry out the scheme.

The alleged scheme need not actually succeed in defrauding anyone.

To "cause" interstate wire communications facilities to be used is to do an act with knowledge that the use of the wire communications facilities will follow in the ordinary course of business or where such use can reasonably be foreseen.

Each separate use of the interstate wire communications facilities in furtherance of a scheme to defraud by means of false or fraudulent pretenses, representations, or promises constitutes a separate offense.

Fifth Circuit Pattern Jury Instruction § 2.60 (wire fraud, 18 U.S.C. § 1343).[7]

---

[7]Contrary to the defendants' arguments, it is clear from the case literature discussed in the Notes to the Pattern Instructions that: (1) the government need not prove that the defendants violated a known, legal duty; (2) proof of wire fraud does not

Nowhere in the well-settled instructions on proving a mail/wire fraud case is there a requirement that the government must prove that the defendants violated a separate law or breached a certain duty. The government's argument that the state law requirements have no bearing on whether it can prove its federal wire/mail fraud case against the defendants is bolstered by United States v. Moore.[8] "The federal mail fraud statute prohibits use of

---

require proof that the defendant's conduct violated a separate law or regulation; (3) the alleged scheme need not actually succeed in defrauding anyone; (4) good faith, while perhaps a defense to mail/wire fraud charges, does not necessarily warrant a separate defense instruction so long as the Court allows evidence and argument concerning the defendants' good faith; (5) unlike tax evasion cases, in wire/mail fraud cases in the Fifth Circuit, ignorance of the law is no defense; the government must prove only that the defendants had the intent to deceive. No doubt, however, any claim of misunderstanding or lack of clarity of the State regime will be intertwined, defensively, with the Instructions. See United States v. Mann, 493 F.3d 484 (5th Cir. 2007).

[8]In Moore, the defendants sold real estate without informing the purchasers that the property was encumbered by an outstanding mortgage. 37 F.3d 169, 172 (5th Cir. 1994). The defendants intended to have the purchasers believe that there was no outstanding mortgage, but the defendants did not affirmatively misrepresent that the property was free of mortgages. Id. The outstanding mortgage was recorded in the public records and would have been discovered had the purchasers searched them. Appealing their mail fraud convictions, the defendants argued that those facts did not establish the requisite mens rea for a mail fraud conviction because state law imposed no duty to disclose the existence of a mortgage and, in fact, state law deemed purchasers to be on constructive notice of mortgages recorded in the public records. Id. Affirming the district court's denial of the defendants' motion to withdraw their guilty pleas, the Fifth Circuit rejected the defendants' argument, explaining that the

> mail fraud statute prohibits use of postal services in the furtherance of fraudulent schemes, whether or not prohibited by state law. Defendants' contention that they

postal services in furtherance of fraudulent schemes, whether or not prohibited by state law." See Moore, 37 F.3d at 172 (quoting United States v. Foshee, 606 F.2d 111, 113 (5th Cir. 1979)); see also United States v. Dotson, 407 F.3d 387, 393-94 (5th Cir. 2005)(noting that "[e]ven assuming that Dotson would have prevailed in a court action to obtain benefits from [the disability policy issuer] under Louisiana law, he is not entitled to speed up the process by obtaining the benefits through misrepresentation.").

Hoffman and Arata fail to persuade the Court to import the willfulness requirement in tax evasion cases into the government's burden of proving mail or wire fraud. In United States v. Cheek, the Supreme Court held that the standard for statutory willfulness in criminal tax prosecutions is the "'voluntary, intentional

---

> had no duty under [state] law to disclose the ... mortgage to the [purchasers] is therefore irrelevant to the question before this Court. The evidence ... established that defendants intended to deceive the [purchasers] concerning the existence of the mortgage, and thereby to induce them to buy real estate they might not otherwise have purchased.

Id. (internal citation omitted). Like the defendants in Moore, the government suggests that the defendants seek to insulate their intentional conduct by claiming they had no duty to conduct themselves otherwise. But Moore found that the legality of the defendants' conduct under state law was irrelevant. Similarly, the government underscores that the defendants' claim that Louisiana law did not prohibit their intended conduct has no bearing here: the defendants are not charged with violating state laws; rather, they are charged with engaging in a scheme to induce the issuance of film tax credits by submitting materially false, misleading, and fraudulent information.

violation of a known legal duty.'"  498 U.S. 192, 201 (1991) (quotation omitted).  Unlike in Cheek, however, to prove the specific intent element of a violation of the mail fraud statute, the government must prove that the defendant has knowingly devised a scheme to defraud during the course of which defendants employed false material representations; nowhere do the mail/wire fraud statutes require proof of a violation of a separate legal duty.[9] The defendants fail to persuade that the government in this mail/wire fraud case bears the burden of proving such willfulness. The government has submitted persuasive authority that it need not prove that the defendants' conduct violated a state rule or regulation.  See, e.g., United States v. Green, 592 F.3d 1057 (9th Cir. 2010)(noting that "few courts have considered ... whether actions that are not otherwise expressly prohibited can nonetheless violate the federal fraud statutes", but holding that "the offense of wire fraud does not require that [the defendant's] conduct violated the E-Rate program [designed to promote telecommunications access for low-income, rural, high-cost, or otherwise undeserved communities]" described by the court as "complicated and, at times,

---

[9] The government cites Pasquantino v. United States, 544 U.S. 349, 357 (2005), which although the Supreme Court was not confronted with any specific intent issues, it did note that proving a wire fraud scheme that was aimed at a victim's tax revenue required proof of "a scheme or artifice to defraud" and the Court indeed found that the defendants' plot in fact constituted a scheme or artifice to defraud Canada of taxes due on smuggled liquor.

less than clear[.]").[10]

## II.

The defendants urge the Court to rule, as a matter of law, that the government bears the burden of proving that the defendants had no good faith intention to deliver and did not deliver the benefit of the bargain, or that the defendants intended to and did in fact materially harm the state agency.  Put differently, if the defendants had a good faith intention to deliver (or if they in fact delivered) the benefit of the bargain, then the defendants submit that the government cannot prove wire or mail fraud as a matter of law on Counts 2 through 21.  They invoke several Second Circuit cases in support of their argument, United States v. Novak, 443 F.3d 150, 159 (2d Cir.), cert. denied, 549 U.S. 997 (2006), United States v. Shellef, 507 F.3d 82, 108 (2d Cir. 2007), United States v. Regent Office Supply Co., 421 F.2d 1174, 1182 (2d Cir. 1970), and United States v. Starr, 816 F.2d 94, 98 (2d Cir. 1987).

---

[10]Green cites "[a] number of courts", including the Fifth Circuit, "[that] have considered the related issue of whether the crime of wire fraud must be predicated on a violation of state law." See id. at 1063. Green also cites Schmuck v. United States, 489 U.S. 705 (1998), in which the defendant was convicted of mail fraud based on his scheme to roll back the odometers on 150 cars and sell them to dealerships in Wisconsin. The Supreme Court rejected the defendant's argument that odometer tampering was a lesser included offense to the mail fraud charge and that the jury should have been instructed on as such. Id. at 721-22 (noting the elements of mail fraud, and holding that "[t]he offense of odometer tampering ... is not a subset of any element of mail fraud. Knowingly and willfully tampering with an odometer is not identical to devising or intending to devise a scheme to defraud.").

The defendants suggest that the government's fraud charges go to the timing of the claim of infrastructure tax credits, not whether the claim of base investment for that type of expenditure is itself an invalid claim.  The defendants contend that "[a]s long as the payment is ultimately made or accepted by the vendor and approved by [the state agency], there is no loss or harm to [the state agency], much less a loss of the Benefit of the Bargain." The benefit of the bargain, the argument goes, is not cash spent in Louisiana, but, rather, the benefit of the bargain is a completed and operating post-production facility that attracts business to Louisiana.  That the project was eventually completed seems without question.

The government counters that the case literature does not impose on it a duty to prove that the victim, here the state agency, was actually defrauded; but that submitting fraudulent invoices for expenditures that had not actually been made, to make it appear as if they had been made, would be "reasonably calculated to deceive persons of ordinary prudence and comprehension" and would satisfy the government's burden to prove a scheme to defraud. The government invokes Fifth Circuit case literature supporting its position that intent to defraud for self-enrichment purposes satisfies the specific intent to defraud element of mail/wire fraud.  See United States v. Richards, 204 F.3d 177, 207 (5th Cir. 2000), *overruled on other grounds by*, United States v. Cotton, 535

16

U.S. 625 (2002)("An intent to defraud for the purpose of personal gain satisfies the 'harm' requirement of the wire fraud statute."); United States v. St. Gelais, 952 F.2d 90, 95 (5th Cir. 1992)(holding that "intent to defraud another for your own financial gain constitutes the specific intent to defraud as required by the wire fraud statute."); United States v. Mann, 493 F.3d 484, 493 (5th Cir. 2007)(affirming conviction for wire fraud based on theory of self-enrichment). The key is the element of "defraud." Even indulging the defendants' benefit of the bargain theory, invoking United States v. Dotson, 407 F.3d 387 (5th Cir. 2005), the government submits that the defendants' arguments fail because they did not have the right to speed up the State's payments to them through misrepresentation.[11]

Insofar as the defendants urge the Court to rule that the government must prove that the State did not receive the benefit of

---

[11] "Anyone with a savings account in the bank," the government submits, "can appreciate that time itself has value, an opportunity for interest to compound and value to accrue." The government further contends that:
> Hoffman also conveniently ignores the fact that he has submitted to the State claimed expenditures of well over $11 million. These claimed qualifying expenditures include hundreds of thousands of dollars in fraudulent legal fees, over $2 million in fraudulent supervisory/management/consultant fees, $150,000 in fraudulent rent fees, and almost $1 million in fraudulent interest payments for which the State did not bargain. While these [alleged] attempts at defrauding the State have been unsuccessful thus far, [Hoffman] is charged for these misrepresentations as well, and there [seems to be] no plausible argument that the State received the "benefit of the bargain" in this amount.

17

the bargain, the Court declines to do so.  The mail/wire fraud statutes simply do not require that the government prove that the victim was actually defrauded.[12]  Moreover, the Court has already summarized the government's burden to prove mail or wire fraud; with respect to the intent to defraud element, in the Fifth Circuit, "[t]he requisite intent to defraud exists if the defendant acts 'knowingly and with the specific intent to deceive, ordinarily for the purpose of causing some financial loss to another or bringing abut some financial gain to himself.'" United States v. Keller, 14 F.3d 1051, 1056 (5th Cir. 1994)(citation, brackets omitted).  Reliance on Second Circuit decisions, in the face of applicable Fifth Circuit precedent and literature, is inappropriate.

IT IS ORDERED: that the defendants' motions *in limine* regarding mens rea and benefit of the bargain are DENIED insofar as the defendants seek rulings as a matter of law expanding the government's burden of proof beyond the well-settled elements of mail and wire fraud in this Circuit.

New Orleans, Louisiana, March 20, 2015

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[12] See, e.g., Fifth Circuit Pattern Jury Instruction § 2.60.