UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 14-022 |
| PETER M. HOFFMAN, MICHAEL P. ARATA, SUSAN HOFFMAN | SECTION "F" |

ORDER AND REASONS

Before the Court is Peter Hoffman and Michael Arata's motion *in limine* to exclude evidence of "non-disclosure" or "implied" misrepresentation of material facts to auditors and the Louisiana Department of Economic Development. For the reasons that follow, the motion is DENIED.

**Background**

In this financial fraud case, three defendants face federal criminal charges including wire and mail fraud and conspiracy, and one of those defendants, Michael Arata, also faces false statements charges. These charges arise out of the defendants' alleged scheme to defraud the State through their participation in the State of Louisiana's infrastructure tax credit program.

The backdrop of this federal criminal case is a Louisiana state law tax credit program. In 1992, to encourage local development of a motion picture and television industry, the State of Louisiana enacted the Louisiana Motion Picture Incentive Act,

1

La.R.S. § 47:6007.  By law, the State provided incentives in the form of tax credits for State-certified infrastructure projects, as well as for production projects.[1]  Individuals and businesses making motion pictures were eligible to receive tax credits, which were calculated as a percentage of the companies' qualified expenditures in Louisiana. Infrastructure expenditures included the purchase, construction, and use of facilities that were directly related to and utilized for motion picture production in Louisiana. To qualify for infrastructure tax credits, all funds had to be expended, and such expenditures had to be verified by an independent Louisiana Certified Public Accountant.

This tax credit program is administered by the Office of Entertainment Industry Development, an office within the Department of Economic Development.  The administrative review and approval process was described by the Louisiana Supreme Court as follows:

---

[1] La.R.S. § 47:6007 has been amended several times. Act 456 of 2005 authorized income tax credits for State-certified infrastructure projects.  With respect to these infrastructure projects, Act 456 of 2005 provided that if the total base investment was greater than $300,000, each investor was allowed a tax credit of 25% of the base investment, and an additional 15% tax credit was allowed until January 1, 2008; the available tax credit totaled 40%.  The relevant version of the Act for the purposes of the criminal charges at issue in this case is the amendment accomplished by Act 456, effective July 1, 2007.  Act 456 provided for the infrastructure tax credits authorized by Act 456 of 2005 through January 1, 2009, but imposed limits on those tax credits for applications filed after August 1, 2007: a six-month deadline was imposed and a $25 million per project cap on the tax credits was also imposed. The film infrastructure tax credits at issue in this matter were repealed in 2009, but the film production tax credits remain in effect.

2

To receive an initial certification letter from the State approving a project as a State-certified infrastructure project, an applicant must file an application for motion picture investor tax credits with the OEID, and obtain approval of the project from the DED, OEID, and the Department of Administration. See Red Stick Studio Development, L.L.C. v. Louisiana, 56 So.3d 181, 183-84 (La. 2011) (citing La.R.S. 47:6007 (2005)). After an initial certification letter is issued, and accepted by the applicant, the applicant must then submit to those same agencies a cost report of infrastructure expenditures; the report must be audited and certified by an independent certified public accountant. Id. at 183 n.4. Based on the applicant's submission, the relevant state agencies determine whether those infrastructure expenditures qualify for tax credits; if so, those agencies will certify the tax credits based upon the approved infrastructure expenditures. Id. Once certified, tax credits could be applied to offset against the Louisiana taxpayer's income tax liability, or they may be sold. Id.

In renovating the property at 807 Esplanade Avenue with the vision of turning it into a post-production film studio, Peter Hoffman, Susan Hoffman, and Michael Arata, through their respective companies, availed themselves of the State film infrastructure tax credit program.[2] They submitted three applications and supporting

---

[2] On May 29, 2008, the State of Louisiana sent to Seven Arts Post an infrastructure project pre-certification letter in which the State lays out the initial terms of the tax credit program and

documents to the State for tax credits. As statutorily required, the defendants first submitted the 807 Esplanade expenditures to auditors for verification. To verify the expenditures, the auditors requested proof of payment such as invoices, bank transfers, bank statements, and other corporate financial records. Based on this information, the auditors created audit reports detailing the defendants' claimed expenditures on 807 Esplanade. These audit reports were submitted as part of the February 26, 2009, January 20, 2010, and July 3, 2012 submissions to the State for film infrastructure tax credits.

On June 19, 2009 the State issued $1,132,480.80 in tax credits to Seven Arts Production Louisiana, LLC as a result of the first application, the February 26, 2009 submission. Mr. Arata paid cash

---

agreement between the State and the developers of 807 Esplanade. The letter states:

> In order to qualify for these credits, all funds invested must actually be expended on the state-certified infrastructure project with accounting certification in accordance with Departmental guidelines for the claimed expenditures included. Again, as noted above, while your project indicates an anticipated total of $9,000,000, final certification and granting of tax credits under these provisions will be based on the following: the actual amount expended by the project, verification in the form of an audit conducted by an independent Louisiana Certified Public Accountant that these expenditures were made and meet the requirements of applicable law, and approval by DED, OIED and DOA.

In exchange for these expenditures submitted to the State, "[i]f the total base investment is greater than three hundred thousand dollars, each investor shall be allowed a tax credit of forty (40%) of the base investment made by that investor."

to the partnership for these tax credits, at a discounted price, through his company LEAP Film Fund II, LLC, then, the government claims, sold the tax credits to local businesses and individuals for profit. The State did not issue tax credits based on the January 20, 2010 and July 3, 2012 applications.

On February 6, 2014 a grand jury returned a six-count indictment, charging Peter Hoffman and Michael Arata with conspiracy (Count 1), as well as aiding and abetting, and actually committing wire fraud (Counts 2 - 6), in violation of 18 U.S.C. §§§ 371, 2, 1343. After first superseding on April 3, 2014,[3] the government filed a 25-count second superseding indictment on May 15, 2014, charging the Hoffmans and Mr. Arata with conspiring to commit, committing, and aiding and abetting, wire and mail fraud, in violation of 18 U.S.C. §§§§ 371, 1343, 1341, and 2, and also charging Mr. Arata with making false statements to federal agents.[4]

With respect to Count 1, which alleges conspiracy to use the

---

[3]This superseding indictment filed on April 3, 2014 charged Susan Hoffman for the first time, and added additional charges against the other defendants: conspiracy (Count 1), wire fraud and aiding and abetting against Peter Hoffman and Michael Arata (Counts 2 - 5), wire fraud and aiding and abetting against all three defendants (Counts 6 - 17), mail fraud and aiding and abetting against all three defendants (Count 18), and false statements against Michael Arata only (Counts 19 - 22).

[4]Count 1 alleges conspiracy, Counts 2-5 allege wire fraud as against only Messrs. Hoffman and Arata, Counts 6-20 allege wire fraud against all three defendants, Count 21 alleges mail fraud, and Counts 22 - 25 charge only Michael Arata with making false statements to federal agents in violation of 18 U.S.C. § 1001.

5

mail or wires in furtherance of the defendants' scheme to defraud, the government alleges 37 specific overt acts, and charges that the defendants accomplished their conspiracy, and took steps to conceal from the State their scheme, when they: 1). prepared and filed material false and misleading tax credit applications, fraudulently claiming that certain expenditures had been made to 807 Esplanade when those expenditures had not been made; 2). prepared and submitted to the auditors and to the State materially false and misleading internal accounting books and records and payment receipt certifications to make it appear as if certain expenditures had been made and certain items had been paid for and received when those expenditures had not been made and those items had not been paid for or received; 3). prepared and submitted to the auditors and the State materially false and misleading invoices in support of fraudulent expenditures; 4). conducted materially false and misleading circuitous bank transfers of money to make it appear that certain items were paid for when those items had not been paid for; and 5). prepared and submitted to the auditors proofs of payment that were materially false and misleading in that only outgoing money transfers were disclosed to the auditors when the money had actually been immediately returned to the original bank account and those return money transfers were not disclosed to the auditors.

    As to the wire fraud charges (Counts 2 - 5 against Peter

Hoffman and Michael Arata and Counts 6 - 20 against all three defendants), the government alleges:

> Beginning on or about March 1, 2006, and continuing until on or about July 3, 2012, in the Eastern District of Louisiana and elsewhere, the defendants, Peter Hoffman, Michael Arata, Susan Hoffman ... did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises by submitting and causing to be submitted materially false, misleading and fraudulent information to the auditors and to the State of Louisiana for the purpose of obtaining infrastructure tax credits relative to 807 Esplanade.  All in violation of Title 18, United States Code, Sections 1343 and 2.

With respect to the mail fraud charge (Count 21), the government alleges:

> On or about February 3, 2010 ... the defendants, Peter Hoffman, Michael Arata, Susan Hoffman ... for the purpose of executing and attempting to execute, and in furtherance of, the scheme and artifice to defraud set forth in paragraph 2 of Counts 6 through 20 above, did knowingly send and cause to be sent, delivered, and moved by private commercial interstate carriers correspondence dated February 2, 2010, addressed to an auditor for the State of Louisiana with attached exhibits, corporate agreements, and invoices for project management, equipment consulting, and office rent.  All in violation of Title 18, United States Code, Sections 1341 and 2.

On July 18, 2014, the Court denied the defendants' motion to dismiss Counts 1 through 21 of the second superseding indictment. United States v. Hoffman, No. 14-22, 2014 WL 3589563, at *9-11 (E.D.La. July 18, 2014).  After much motion practice, with the trial approaching, the defendants now seek a ruling excluding evidence of "non-disclosure" or "implied" misrepresentation of material facts to auditors and the Louisiana Department of Economic

Development.

I.

Counts 2 through 22 of the second superseding indictment charge wire and mail fraud. In outlining each charge, the indictment includes a date and a description of each communication allegedly sent through the mails or wires, which are alleged to include "materially false, misleading and fraudulent information."[5]

A.

Peter Hoffman and Michael Arata urge the Court to exclude this evidence, which they say is comprised of documents that are not affirmatively false but, rather, constitute evidence of "non-disclosure" or "implied" misrepresentation. The defendants seek to prevent the government from advancing what the defendants suggest is its theory of implied misrepresentation (facts disclosed by Seven Arts were somehow misleading because other facts were allegedly not disclosed), contending that the documents referenced in the indictment cannot be admitted to prove wire or mail fraud under Federal Rules of Evidence 401 and 403 "[a]bsent a foundation of proof that a specific material fact [in the referenced document] is false." The government counters that the challenged documents are admissible under Federal Rules of Evidence 401, 402, and 403.

---

[5]For example, for Count 6, the indictment provides a date (April 7, 2009) and a description of the wire communication ("E-mail transmitted between Louisiana and outside the State of Louisiana sending invoices for $2,002,480.00 in construction and $1,027,090.00 in film equipment to the State of Louisiana").

The Court agrees.

*B.*

First, the Rules of Evidence offer a generous relevance standard:

> Evidence is relevant if:
>
> (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
>
> (b) the fact is of consequence in determining the action.

Fed.R.Evid. 401.  And Rule 402 provides that relevant evidence is generally admissible and irrelevant evidence is not admissible. Finally, Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Notably, the defendants do not appear to argue that the documents listed in the indictment are irrelevant or fail the balancing test.[6]  Nor could they: the documents listed in the indictment are those that the government will apparently submit in its attempt to prove its mail and wire fraud charges;[7] these

---

[6]It seems that the defendants are advancing a pretrial sufficiency-of-the-evidence argument.  Of course, defendants may not challenge the sufficiency of an indictment on the ground that the allegations are not supported by adequate evidence.  United States v. Mann, 517 F.2d 259, 266-67 (5th Cir. 1975)(citation omitted).

[7]The Fifth Circuit instructs that the elements of mail or wire fraud that must be charged and proved by the government are: (1) the defendant devised or intended to devise a scheme to defraud,

materials meet the low threshold relevance test, and are not subject to exclusion based on Rule 403's balance test.

Second, putting aside the ostensible evidentiary dimension of the defendants' motion, the Court observes that it has previously denied two motions advanced by the defendants in which they requested pretrial rulings as a matter of law regarding the mail and wire fraud elements the government must prove at trial. See Order and Reasons dated March 20, 2015 (denying mens rea and benefit of the bargain motions). Insofar as the defendants advance what the Court perceives to be at this stage academic arguments concerning what the government will offer in an attempt to prove its wire and mail fraud case, the present request meets the same fate as his mens rea and benefit of the bargain motions. The defendants reiterate the premise that a mere failure to disclose without a legal or fiduciary duty to do so is not fraud, as a matter of law, for purposes of the mail/wire fraud statutes. But the Court has already considered this issue and ruled that "[n]owhere in the well-settled instructions on proving a mail/wire fraud case is there a requirement that the government must prove that the defendants violated a separate law or breached a certain duty." See Order and Reasons dated March 20, 2015. And, although

---

(2) the mails [or wires] were used for the purpose of executing, or attempting to execute, the scheme, and (3) the falsehoods employed in the scheme were material." United States v. McMillan, 600 F.3d 434, 447 (5th Cir. 2010).

the defendants would seem to insist that the government must prove affirmative false misrepresentations and active concealment (something more than non-disclosure) in order to prove a scheme to defraud, the pattern jury instructions do not support this more demanding standard:[8]

> A representation [pretense] [promise] is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. **A representation would also be "false" if it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with the intent to defraud.**

Fifth Circuit Pattern Jury Instruction § 2.60 (wire fraud, 18 U.S.C. § 1343)(emphasis added).[9]  Furthermore, the defendants

---

[8] The Court is not even convinced that the standard advanced by the defendants is more demanding than that which the government must prove.  The defendants simply isolate the "false material misrepresentations" element of mail/wire fraud, and suggest that as a matter of law the government cannot prove this element with the documents listed in the indictment.  In so doing, the defendants disregard the other elements that the government must prove in order to carry its burden of proving mail/wire fraud.  That is, the government will not prove its case by simply putting its email evidence before the jury but, rather, must prove that the email evidence was part of a **scheme to defraud** devised by defendants with a knowing intent to deceive.

[9] The Fifth Circuit Pattern Jury Instructions provide:
   Title 18, United States Code, Section 1343, makes it a crime for anyone to use interstate wire communications in carrying out a scheme to defraud.
   For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
   First: That the defendant knowingly devised or intended to devise any scheme to defraud, that is (describe scheme from the indictment);
   Second: That the scheme to defraud employed false material representations [false material pretenses] [false material promises];

11

Third: That the defendant transmitted [caused to be transmitted] by way of wire communications, in interstate commerce, any writing for the purpose of executing such scheme; and

Fourth: That the defendant acted with a specific intent to defraud.

A "scheme to defraud" means any plan, pattern, or course of action intended to deprive another of money or property.

A "specific intent to defraud" means a conscious, knowing intent to deceive or cheat someone.

A representation [pretense] [promise] is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation would also be "false" if it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with the intent to defraud.

A representation [pretense] [promise] is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

It is not necessary that the government prove all of the details alleged in the indictment concerning the precise nature and purpose of the scheme.  What must be proved beyond a reasonable doubt is that the defendant knowingly devised or intended to devise a scheme to defraud by means of false or fraudulent pretenses, representations, or promises that was substantially the same as the one alleged in the indictment.

It is also not necessary that the government prove that the material transmitted by wire communications was itself false or fraudulent, or that the use of the interstate wire communications facilities was intended as the specific or exclusive means of accomplishing the alleged fraud.  What must be proved beyond a reasonable doubt is that the use of the interstate wire communications facilities was closely related to the scheme because the defendant either wired something or caused it to be wired in interstate commerce in an attempt to execute or carry out the scheme.

The alleged scheme need not actually succeed in defrauding anyone.

To "cause" interstate wire communications facilities to be used is to do an act with knowledge that the use of the wire communications facilities will follow in the ordinary course of business or where such use can

12

concede as they must that, to prove mail or wire fraud, the government need not prove that the contents of the wire or mailings were themselves false or fraudulent.  See Pattern Criminal Jury Instruction 2.59, 2.60; see also United States v. Strong, 371 F.3d 225, 228 (5th Cir. 2004); United States v. Barraza, 655 F.3d 375, 383 (5th Cir. 2011).  It follows that there is no support for the added evidentiary hurdle the defendants advance here: before a piece of evidence is admitted in a mail or wire fraud case, the government must first prove the falsity of a material statement of fact.

At best, the issue raised by the defendants is for argument and jury instructions, if the Court can be persuaded that a particular instruction is warranted by the evidence.  The defendants' motion is DENIED.

                            New Orleans, Louisiana, April 1, 2015

                            _____
                                   MARTIN L. C. FELDMAN
                            UNITED STATES DISTRICT JUDGE

---

   reasonably be foreseen.
       Each separate use of the interstate wire communications facilities in furtherance of a scheme to defraud by means of false or fraudulent pretenses, representations, or promises constitutes a separate offense.

Fifth Circuit Pattern Jury Instruction § 2.60 (wire fraud, 18 U.S.C. § 1343).