UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                CRIMINAL ACTION

v.                                                      NO. 14-022

PETER M. HOFFMAN,                                       SECTION "F"
MICHAEL P. ARATA,
SUSAN HOFFMAN

ORDER AND REASONS

Before the Court are two motions: (1) the United States' motion *in limine* for pretrial determination of admissibility of emails; and (2) the United States' motion to admit summary witness testimony and summary exhibits. For the reasons that follow, the motions are GRANTED.

**Background**

In this financial fraud case, Peter and Susan Hoffman and Michael Arata face wire/mail fraud and conspiracy charges, and Michael Arata faces false statements charges. These federal criminal charges arise out of the defendants' alleged scheme to defraud the State through their participation in the State of Louisiana's infrastructure tax credit program.[1]

The parties have engaged in substantial motion practice as

---

[1] The underlying facts are more completely summarized in the second superseding indictment and in this Court's Order and Reasons dated July 18, 2014 (United States v. Hoffman, No. 14-22, 2014 WL 3589563, at *1-3 (E.D. La. July 18, 2014)).

1

this case approaches its April 13, 2015 trial date. The government now seeks a pretrial determination as to the admissibility of (a) emails between the defendants and others in this case without the necessity of calling a custodian of records to authenticate each and every separate email at trial; and (b) summary witness testimony and summary exhibits.

I.

Rule 104 of the Federal Rules of Evidence obliges the Court to "decide any preliminary question about whether ... evidence is admissible." Fed. R. Evid. 104(a). In making this preliminary determination, "the court is not bound by evidence rules, except those on privilege." Id.[2] Such pretrial determination advances the elimination-of-unjustifiable-expense-and-delay purpose of the Federal Rules of Evidence. See Fed. R. Evid. 102 ("These rules should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination.").

---

[2]Subsection (b) of Rule 104 provides:

> (b) Relevance That Depends on a Fact. When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later.

*A.*

The government requests that the Court rule prior to trial that emails to, from, and between the defendants (1) meet the requirements of Rule 901 for authentication without the need to call a records custodian at trial; and (2) are admissible as substantive evidence.  Neither Michael Arata nor Susan Hoffman oppose the government's motion.  Indeed, apparently all counsel agreed to stipulate to the authenticity of these email records. And although Peter Hoffman submits that he does not expect the government to offer evidence authenticating the technical source of the emails, and that he will stipulate to the authenticity of emails sent to him or received by him, he nevertheless advances a limited objection insofar as he "cannot ... stipulate to the authenticity of any emails authored, sent and/or received between third parties not involving Mr. Hoffman, and objects to the introduction of any such email without the laying of proper foundation."  His objection is without merit.

In seeking a preliminary determination of admissibility of emails authored, sent, and received by the defendants, the government submits that it received these emails in response to grand jury subpoenas issued to several entities, including the auditors, the State, the creditors and vendors for 807 Esplanade, and the various entities related to Seven Arts.  Because the described emails meet the authentication requirements of the

3

Federal Rules of Evidence, and insofar as they will be offered in evidence as non-hearsay statements, the emails are admissible unless otherwise objectionable.

>   Rule 901 governs authenticating or identifying evidence:
>
>   (a) In General.  To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.
>
>   (b) Examples.  The following are examples only -- not a complete list -- of evidence that satisfies the requirement:
>
>   ...
>
>   (4) Distinctive Characteristics and the Like.  The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances....

There is sufficient evidence to support a finding by the jury that the emails authored, sent, and received by the defendants are what the government claims that they are.  These emails contain distinctive characteristics: the names of the defendants and other employees of the various entities, computer server addresses associating the emails with the defendants and affiliated companies, and the dates on which the emails were sent and received.  That these emails are authentic due to these distinctive characteristics is beyond dispute. Moreover, insofar as the government will offer such emails in evidence as statements of a party opponent (Rule 801(d)(2)(A)); adoptive admissions (Rule 801(d)(2)(B)); or coconspirator statements (Rule 801(d)(2)(E)), it

4

likewise appears beyond dispute that the emails will be admissible as substantive (non-hearsay) evidence.[3]  See United States v. Safavian, 435 F. Supp. 2d 36, 38 (D.D.C. 2006).

*B.*

The government also requests that the Court preliminarily rule on the admissibility of certain summary exhibits and supporting summary testimony pursuant to Federal Rule of Evidence 1006.  The government anticipates calling FBI Financial Analyst Melanie Haggerty to summarize voluminous evidence of repeated transfers of large amounts of money in and out of multiple bank accounts related to corporate entities controlled by the accused defendants; through her testimony, the government anticipates introducing flow charts and financial summaries, which will be provided to the defendants prior to trial.[4]  The government also anticipates calling FBI Special Agent Robert Blythe to testify regarding his investigation and to connect the financial transactions and other trial evidence to the infrastructure expenditures submitted to the State by the defendants. The government submits that the voluminous documentary evidence and the complex nature of the related financial transactions support its request to admit summary exhibits and

---

[3] Of course, by this observation the Court does not now preempt any supported objections that defense counsel may offer at trial.

[4] The corresponding bank records evidently were made available to the defense in early 2014.

testimony to assist the jury.  The Court agrees.

Rule 1006 provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Rule 1006, which is to be construed broadly, "requires only that the underlying records be voluminous and that in-court examination be inconvenient." United States v. Duncan, 919 F.2d 981, 988 (5th Cir. 1991)(citation omitted); United States v. Bishop, 264 F.3d 535, 547 (5th Cir. 2001).  The case literature instructs that summary charts are generally admissible when these four requirements are met:

> (1) they are based on competent evidence already before the jury,
> (2) the primary evidence used to construct the charts is available to the other side for comparison so that the correctness of the summary may be tested,
> (3) the charter preparer is available for cross-examination, and
> (4) the jury is properly instructed concerning use of the charts.

Bishop, 264 F.3d at 547.  Meeting these requirements minimizes any risk of prejudice.  Id.

The summary evidence requirements appear to be met here sufficient to make a preliminary ruling that the summary evidence contemplated by the government (and provided to the defense) is authorized by Rule 1006 and Fifth Circuit case literature.  That

the underlying records are voluminous and in-court examination is inconvenient is beyond dispute.  Furthermore, the defendants have in their possession the evidence used to construct the charts and they are entitled to cross-examine the summary witnesses.[5] Nevertheless, although he "does not object in principle under Rule 1006 to the use of summary exhibits at trial in this case (with appropriate limiting instructions)[,]" Peter Hoffman opposes the government's request to admit "each of the twelve specific summaries proffered by the government."[6]  Mr. Hoffman submits seven objections on various grounds.

Exhibit 406, which purports to be a spreadsheet prepared by Special Agent Blythe, summarizes expenditures from Seven Arts records and corresponding transactions from bank records.  The column headers read: Date, Invoice #, Amount, Description, Date of Circular Tx/Purported payment, and (the classification from the)

---

[5] Because the government seeks to introduce its summaries not as mere demonstrative aids, but as evidence under Rule 1006, the applicable Fifth Circuit Pattern Jury Instruction is 1.44:

> Certain charts and summaries have been received into evidence.  You should give them only such weight as you think they deserve.

The Note corresponding to 1.44 acknowledges that, if the proponent of summary evidence seeks its admission as evidence, "an instruction may not be necessary."  Of course, defense counsel should propose any limiting instructions that might be supported by the evidence at trial.

[6] Neither Susan Hoffman nor Michael Arata object to the government's proposed presentation of summary evidence.

Cost Report.  Mr. Hoffman objects to these headings as ambiguous and argumentative, and he singles out the descriptor "Computer Warehouse Equipment" as misleading the jury to believe that the reflected payment was to an entity known as Computer Warehouse when, in fact, the payment was a disclosed related party payment to New Moon Pictures from Seven Arts. Mr. Hoffman also contends that the cost report summary on the right-hand side of the chart is unclear; that nothing in the exhibit shows any circular payments; and that the exhibit is relevant "only if something on that schedule was falsely stated to the auditors preparing the second audit report."  Insofar as these objections fail to provide any ground for excluding the exhibit, the objections are overruled. Mr. Hoffman may re-urge (only) those objections that are not cured by the anticipated testimony that the government suggests will accompany this summary chart.  This same ruling applies to each of the contested summary exhibits.

Mr. Hoffman advances similar objections to Exhibit 407, which purports to summarize bank records to show that Michael Arata's company provided $400,000 to a Seven Arts bank account for four days and that the money was then returned.  (The government contends that other evidence will show that during the funds' stay in the Seven Arts account, the funds were used to accomplish the transfers shown in Exhibits 408, 409, and 410).  Mr. Hoffman objects that Exhibit 407 is "intended to make the argument that

such loans are somehow illegal or evidence of fraudulent intent, when there is no foundation for that argument." But the exhibit, which will be accompanied by testimony, simply includes dates, dollar amounts, the last four digits of account numbers, the names of bank accounts, and arrows to show the movement of funds. There is nothing inherently argumentative about the exhibit that would overcomes its admissibility under Rule 1006.

Mr. Hoffman again advances similar arguments as to Exhibits 408, 409, and 410. He also contends that the exhibits are confusing and ambiguous because they reference the initials "RB" along with four numbers. But the government explains, as the accompanying witness likely would explain, that the letters are shorthand for Regions Bank and the four digits correspond to the last four digits of the bank account numbers. That Mr. Hoffman's name is listed in the exhibit is likewise unobjectionable: the government submits that the description of the bank account naming Peter Hoffman reflects the name of the account in the bank records (which have been provided to Mr. Hoffman), "Seven Arts Filmed Entertainment Louisiana LLC Leo Deuvernay LLC Peter M Hoffman."

As to Exhibit 411, which purports to summarize bank records to show nine sets of transactions related to Seven Arts' claimed expenditures for film equipment. Mr. Hoffman advances a similar objection to the fact of summarizing this exhibit: he complains that the exhibit is ambiguous (because it is "a series of numbers,

some with dollar signs and some without") and that it lacks relevance and foundation.  Any ambiguity perceived by Mr. Hoffman as to the numbers with dollar signs and those without is cured not only by the back up documentation he admits that he was provided by the government, but also by the fact, at trial, the exhibit will accompany testimony from a witness who can explain what the back up documentation shows: the numbers with dollar signs reflect amounts of money and the numbers without reflect the last four digits of bank transaction sequence numbers.[7]

Exhibit 412 is a graph purporting to summarize bank records to show, the government submits, the context of transfers that Seven Arts presented to the auditors as funding.  Hoffman objects to the "prejudicial drawings of 'stacks of cash'" as argumentative and ambiguous; the government submits that these are commonplace in financial fraud cases.[8]  Mr. Hoffman also objects that the exhibit is not clear as to what underlying transactions the cash movements might relate, noting that Marcia Matthew, one of his employees at Seven Arts embezzled funds from the company and the Hoffmans.  Mr. Hoffman concedes that the government has given him the underlying bank records; that fact resolves most of his objections.  Moreover,

---

[7]This exhibit also contains a legend in the corner of the exhibit, which shows that each company name indicates a specific numbered bank account.

[8]Insofar as the summary exhibits already include dollar signs to indicate that money is being moved around, it would seem that the stacks of cash graphics are redundant.

the objections do not go to the admissibility of the exhibits. Any prejudice that Mr. Hoffman is insinuating will arise by the government's use of these summary exhibits will be minimized by cross-examination of the forensic accountant who will testify alongside this sort of exhibit.

Mr. Hoffman's objections to exhibits 413-416 are more of the same. These exhibits again summarize bank records, this time according to the government to show a more complete picture of transactions that Seven Arts claimed were conducted to pay various invoices. In addition to the familiar ambiguity, relevance, and foundation objections, Mr. Hoffman also suggests that "[t]he numbers on both sides do not agree." To which the government responds that it provided all supporting documents to the defendants and "that these figures differ is simply an accurate reflection of the underlying records: the invoices that Seven Arts provided the auditors total a somewhat different amount than the transfers reflected in the bank statement that Seven Arts provided the auditors." Mr. Hoffman offers no reason why this exhibit should not be *admitted* under Rule 1006.

Finally, Exhibit 417 summarizes bank records to show transactions that Seven Arts claimed were conducted to pay development fees and interest on a loan: on June 29, 2012 Seven Arts transferred funds seven times to New Moon and on the say day New Moon made identical transfers back to Seven Arts. The

11

government submits that the evidence will show that Seven Arts presented to the auditor documentation of only the funds going from Seven Arts to New Moon as proof of payment and did not disclose that the funds were immediately returned to Seven Arts. Mr. Hoffman again advances familiar objections, and also suggests that there can be no claim that Silva Firm was misled in any manner whatsoever regarding these payments. A subject for argument.

None of Mr. Hoffman's objections to these exhibits go to their admissibility or to the requirements of Rule 1006; rather, some of the objections might be a matter for argument by counsel or for cross-examination of the forensic accountant or case agent, who will be summary witnesses testifying as to the contents of these summary exhibits.

The government's motion *in limine* for pretrial determination of admissibility of emails and its motion to admit summary witness testimony and summary exhibits are hereby GRANTED.

New Orleans, Louisiana, April 1, 2015

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE