UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                         CRIMINAL ACTION

v.                                               NO. 14-022

PETER M. HOFFMAN,                                SECTION "F"
MICHAEL P. ARATA,
SUSAN HOFFMAN

ORDER AND REASONS

Before the Court is the defendants' motion to dismiss second superseding indictment pursuant to Rules 6(e)(3)(E)(ii) and 12(b)(3)(A)(v) of the Federal Rules of Criminal Procedure. For the reasons that follow, the motion is DENIED.

**Background**

In this financial fraud case, three defendants face federal criminal charges including wire and mail fraud and conspiracy, and one of those defendants, Michael Arata, also faces false statements charges. These charges arise out of the defendants' alleged scheme to defraud the State through their participation in the State of Louisiana's infrastructure tax credit program.

Peter and Susan Hoffman and Michael Arata were partners in various movie-related business ventures. One such venture was the purchase and renovation of a dilapidated mansion at 807 Esplanade Avenue in New Orleans, which they turned into a post-production film editing facility. In connection with this renovation project,

1

the Hoffmans and Mr. Arata (through companies they owned) allegedly committed, aided and abetted, and conspired to commit, mail and wire fraud by submitting false expense reports in order to deceive the State of Louisiana into issuing state tax credits that they had not actually earned and were not entitled to receive.[1]

The underlying facts are more completely summarized in the second superseding indictment and in this Court's Order and Reasons dated July 18, 2014 (<u>United States v. Hoffman</u>, No. 14-22, 2014 WL 3589563, at *1-3 (E.D. La. July 18, 2014), as well as in other Orders and Reasons, including this Court's March 20, 2015 Order and Reasons in which the Court denied the defendants' motion *in limine* for rulings on three issues of law regarding mens rea and their motion *in limine* to determine an issue of law regarding benefit of the bargain.  Of note to the resolution of the present motion, the Court observed the following in its March 20, 2015 Order and Reasons:

---

[1] The backdrop of this federal criminal case is a Louisiana state law tax credit program, in which individuals and businesses that applied to the State for film infrastructure tax credits were entitled to receive an amount equal to 40% of their qualified and audited film infrastructure expenditures.  Once certified, the applicants could then sell the certification to local businesses and individuals, who would then use the tax credit certifications to offset taxes that the businesses and individuals would otherwise have owed to the State of Louisiana.  As charged in the second superseding indictment: "[t]o qualify for . . . film infrastructure tax credits, all funds had to be expended, and such expenditures had to be verified by an independent Louisiana Certified Public Accountant. . . ."

Peter Hoffman and Michael Arata seek a pretrial ruling on three issues of law regarding the mens rea element of their mail and wire fraud charges. They submit that the Court should rule that:

1. The United States is required to establish as a matter of law that Louisiana Revised Statutes Annotated § 47:6007 as in effect in 2007, the Regulations promulgated thereunder, and official acts of the State of Louisiana in the form of Revenue Rulings ("Applicable Louisiana Tax Law") must clearly and unambiguously forbid and make illegal each act or conduct that the United States alleges in the Second Superseding Indictment is a violation of 18 U.S.C. §§ 1341 and 1343, at the time of the acts or conduct so alleged occurred.

2. The Applicable Louisiana Tax Law did not at the times alleged in the Second Superseding Indictment clearly and unambiguously forbid and make illegal the following acts or conduct therein alleged:

    A. Claims for "base investment" under Applicable Louisiana Tax Law confirmed through formal cash transfer or alleged "circular payments."
    B. Claims for "base investment" under the Applicable Louisiana Tax Law for services not yet completed or equipment not yet delivered.
    C. Claims for "base investment" under the Applicable Louisiana Tax Law in the form of "related party" contracted commitments due to persons affiliated with the claimant, Seven Arts Pictures Louisiana LLC, for development for equipment and/or interest.

3. The United States is required to prove at trial beyond a reasonable doubt that Defendant[s] Peter Hoffman [and Michael Arata] did not have a good faith belief that his acts or conduct were a violation of the Applicable Louisiana Tax Law and that Defendant[s] Peter Hoffman [and Michael Arata] through such acts or conduct made a voluntary, intentional violation of a known legal duty.

In support of this proposed ruling, the defendants contend that the government must prove beyond a reasonable doubt that the challenged conduct was an intentional violation of a known duty and not based on a

>good faith belief that the challenged conduct was not criminal.  The defendants also contend that the Act, La.R.S. § 47:6007, specifically approves related party transactions and its regulations requiring payment of base investment were not promulgated until after the first two applications were submitted by the defendants. How is this, they ask, a criminal scheme to defraud? Their applications did not violate state law, they submit, and the defendants cannot be said to have fair warning that it did.
>
>   The government counters that all of Peter Hoffman and Michael Arata's arguments are defeated by one well-settled point of law: mail and wire fraud do not require proof that a defendant violated a legal duty and the government's burden of proof respecting mens rea is to prove beyond a reasonable doubt that the defendants had a specific intent to defraud.  The Court agrees.

Order and Reasons dated March 20, 2015, pp. 8-9.

The parties have engaged in substantial motion practice as this case approaches its April 13, 2015 trial date.  The defendants now seek to dismiss the second superseding indictment without prejudice because, they submit, the grand jury was incorrectly instructed on the state tax credit program and its administration.

I.

A.

Honoring its tradition of independence, "the grand jury has been accorded wide latitude to inquire into violations of criminal law."  United States v. Calandra, 414 U.S. 338, 345 (1974). Significantly, "[t]he grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered."  Id. at 344-45.  Indeed, it is well settled that an indictment may be based entirely on

4

hearsay and prosecutors may use leading questions before the grand jury.  Costello v. United States, 350 U.S. 359, 363 (1956); United States v. Weiss, 752 F.2d 777, 786 (2d Cir. 1985).  "Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence."  Calandra, 414 U.S. at 345; Costello 350 U.S. at 363 ("An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits.").  "A defendant has no right to require that the Government present all available evidence at this proceeding." United States v. Brown, 574 F.2d 1274, 1275 (5th Cir. 1978).  "A court should not inquire into the sufficiency of the evidence before the indicting grand jury, because the grand jury proceeding is merely a preliminary phase . . . and all constitutional protections are afforded at trial." See United States v. Valencia-Lucena, 925 F.2d 506, 511 (1st Cir. 1991); see also United States v. Cruz, 478 F.2d 408, 412 (5th Cir. 1973)("We will not review the sufficiency of the evidence, if any, supporting the grand jury indictments in this case.").

"The prosecutor is under no obligation to give the grand jury legal instructions" and "[c]ourts . . . generally have found that the prosecutor satisfactorily explains the offense to be charged by simply reading the statute to the grand jury."  United States v.

Lopez-Lopez, 282 F.3d 1, 9 (1st Cir. 2002)); see also United States v. Zangger, 848 F.2d 923, 925 (8th Cir. 1988).  Finally, the Court "may not dismiss an indictment for errors in grand jury proceedings unless such error prejudiced the defendant."  United States v. Whitfield, 590 F.3d 325, 359 (5th Cir. 2009)(quoting Bank of Nova Scotia v. United States, 487 U.S. 250 (1988)).  When a court is asked prior to trial to dismiss an indictment for grand jury errors, dismissal

> is appropriate only "if it is established that the violation substantially influenced the grand jury's decision to indict," or if there is "grave doubt" that the decision to indict was free from the substantial influence of such violations.

Bank of Nova Scotia, 487 U.S. at 256.

*B.*

The defendants urge the Court to dismiss the second superseding indictment without prejudice because, they submit, the grand jury was incorrectly instructed on the state tax credit program and its administration.  More specifically, they cite as error the grand jury's consideration of hearsay testimony by the case agent regarding the state law requirements applicable to film infrastructure tax credit applications, as well as erroneous testimony by the State's forensic auditor concerning the expenditure requirements of the state tax regime.[2]  In light of the

---

[2] They invoke two district court cases in which district courts granted motions to dismiss indictments, United States v. Stevens, 771 F. Supp. 2d 556 (D. Md. 2011) and United States v. Peralta, 763

above-cited, undisputed principles, most critically, the exceedingly constricted nature of the Court's role as supervisor of grand jury proceedings, the government maintains that the grand jury was properly instructed on the applicable *federal* charges by the prosecutors. After reviewing *in camera* the instructions on the federal charges, the relevant colloquy, the Court agrees. Of course, "even if an incorrect instruction was given to the grand jury . . . the indictment . . . valid on its face . . . was sufficient to require a trial of the indictment on the merits." United States v. Battista, 646 F.2d 237, 242 (6th Cir. 1981).

The defendants concede as they must that the government has no duty to present exculpatory information to the grand jury and that the government may obtain an indictment based on hearsay and other unreliable evidence.[3] Yet, at best, this is precisely what

---

F. Supp. 14 (S.D. N.Y. 1991).

[3]The defendants take issue with certain testimony by Special Agent Blythe that certain transfers lacked economic substance as a matter of accounting principles and that he misled the grand jury by testifying that an expenditure provides "cash or cash equivalent." The defendants also challenge the accuracy of Michael Daigle's grand jury testimony; they underscore that Michael Daigle, the state's forensic auditor, told the grand jury what a "qualifying expenditure" was under the film tax credit program: that it "has to be cash expenditures. It can't be liabilities or promissory notes." The defendants insist that this is an objectively wrong view of the requirements of the state tax credit rules. The Court expects there to be vigorous cross-examination of the State-affiliated witnesses at trial and evidence probative of whether "[t]he state has issued tax credits based on circular related party transactions, pre-payment of costs into an escrow account, payment by promissory note, and payment by contribution of an asset" may certainly undermine the credibility of the

defendants suggest the government has done here.[4]  After carefully considering the seven briefs by the parties and the grand jury transcripts, including the colloquy submitted under seal for the Court's *in camera* review, the Court finds that the defendants' motion must be denied.  The instructions to the grand jury on the federal charges closely track the Fifth Circuit Pattern Jury Instructions; the charges this Court will also use, as modified where appropriate.

Notably, the state law that is the backdrop of this case does not govern these federal criminal proceedings.  Put differently, the State law requirements and implementation of its film tax credit program is not coterminous with the government's burden of proof regarding the charged scheme to defraud.  The government's theory of its case is that the defendants defrauded the State by submitting fabricated or falsified support for their tax credit applications; the defendants counter that, in fact, they complied with state law.  But the government need not prove that the defendants violated the letter of state law; rather, the government must prove that the defendants engaged in a *scheme to defraud*. In this regard, the relevant law applicable to these proceedings (from

---

government's witnesses and its theory of the charged scheme to defraud.

[4]No doubt the government and defendants will offer evidence and argument regarding the parameters of what appears to be an ambiguous state tax credit regime that, reputably, lacked regulatory certainty.

which the trial jury's legal instructions will be derived) is the federal criminal law on wire/mail fraud.  That concept has been previously underscored by this Court, and is underscored once again.

The Court has already held: "Nowhere in the well-settled instructions on proving a mail/wire fraud case is there a requirement that the government must prove that the defendants violated a separate law or breached a certain duty.  The government's argument that the state law requirements have no bearing on whether it can prove its federal wire/mail fraud case against the defendants is bolstered by United States v. Moore." See Order and Reasons dated 3/20/15 (footnotes and citation omitted).  The defendants' persistence in urging the Court to rule as a matter of law on the meaning of the state tax regime they are charged of defrauding is without support in the case literature and contrary to the requirements of the federal criminal laws they are charged with violating.  To be sure, the trial jury will hear evidence on the state tax credit regime and its varying interpretations; and the Court will instruct the jury on "scheme to defraud."  Insofar as the state tax credit regime and its clarity or lack thereof is a fact for the jury to consider when determining whether the government has proved beyond a reasonable doubt the scheme to defraud (and intent) elements of its case, the Court declines to review the sufficiency of the evidence supporting the

grand jury indictments here.[5]  Having reviewed the parties' submissions and the transcripts provided, the Court finds that the defendants' perceived errors -- the fact witness' testimony[6]

---

[5]Insofar as the defendants suggest that dismissal of the second superseding indictment is warranted because the government was required to present evidence to the grand jury tending to show that the state tax credit program permitted (or was administered in a way to permit) the conduct charged in this case, the Court disagrees.  If the prosecutor is not required to submit to the grand jury exculpatory information, it follows that the government was not required to submit to the grand jury all fact witness testimony concerning varying permissible interpretations of the state tax credit regime.  In holding that a prosecutor has no binding obligation to present substantial exculpatory evidence to the grand jury, the Supreme Court observed:

> [I]n *Bank of Nova Scotia*, ... we held that "the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment," and that "a challenge to the reliability or competence of the evidence presented to the grand jury" will not be heard. It would make little sense, we think, to abstain from reviewing the evidentiary support for the grand jury's judgment while scrutinizing the sufficiency of the prosecutor's presentation. A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was "incomplete" or "misleading." Our words in *Costello* bear repeating: Review of facially valid indictments on such grounds "would run counter to the whole history of the grand jury institution[,] [and] [n]either justice nor the concept of a fair trial requires [it]."

United States v. Williams, 504 U.S. 36 (1992)(internal citations omitted).  The Fifth Circuit "long ago determined that a complaint that the failure of the government to present evidence to the grand jury which the defendants thought would have been exculpatory was wholly without merit."  United States v. Williams, 809 F.2d 1072, 1083 (5th Cir. 1987).

[6]Witnesses who no doubt will be cross-examined at trial.

10

combined with the prosecutor's instructions[7] -- do not rise to the level of a fundamental error warranting dismissal of the indictment without prejudice.

Accordingly, the defendants' motion to dismiss second superseding indictment is hereby DENIED.

New Orleans, Louisiana, April 10, 2015

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[7] The Court reiterates that it reviewed *in camera* the prosecutor's instructions on the federal criminal charges and finds no error.